state that the mini-series is similar in nature and therefore not outrageous.[6]

Defendants also argue that Earline Ruffin failed to allege in her complaint that she suffered emotional distress because of her portrayal as a prostitute and therefore her claim was properly dismissed. Even so, the district court considered Earline Ruffin's claim under this theory and determined that defendants' conduct was neither extreme nor outrageous.

Plaintiffs' reply brief cites *Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976), a case they claim contains a scenario similar to the manner in which the mini-series misrepresented David Ruffin's death. *Meyer* held that a mortician's mishandling of a dead body, including misrepresentations to the bereaved family about the details of the body's state of decomposition, was extreme and outrageous.

We agree with the district court that assuming each of the inaccuracies described in plaintiffs' complaints and submissions is inaccurate in the manner described by plaintiffs, defendants' actions in producing the story written by Otis Williams about the Temptations cannot be considered so extreme in degree as to go beyond all bounds of decency. The district court did not err in granting summary judgment on these claims.

## VI.  CONCLUSION

Finding the district court did not err in ruling in favor of defendants on plaintiffs' claims of right of publicity, unjust enrichment, defamation, and intentional infliction of emotional distress, we **AFFIRM.**

---

[6]The "newsworthy" cases cited by defendants are distinguishable from plaintiffs' circumstances because of the falsity alleged in the mini-series.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0345P (6th Cir.)
File Name:  01a0345p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CHERYL RUFFIN-STEINBACK, Individually and in her capacity as Personal Representative of the Estate of Davis E. Ruffin, p/k/a David Ruffin; NEDRA RUFFIN; KIMBERLY BOGAN; DAVID RUFFIN, JR.; ESTATE OF EARLINE RUFFIN; JOSEPHINE MILES; ROSE FRANKLIN,
  *Plaintiffs-Appellants,*

   *v.*

SUZANNE DEPASSE; DEPASSE ENTERTAINMENT; OTIS WILLIAMS, "Temptations"; SHELLY BURGER; NATIONAL BROADCASTING COMPANY, INC.; DAVID PICKER; HALLMARK ENTERTAINMENT, Individuals and corporations, jointly and severally,
  *Defendants-Appellees.*

No. 00-1260

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 99-70513; 99-70514; 99-70515; 99-71088—John
Feikens, District Judge.

Argued:  August 8, 2001

Decided and Filed:  September 28, 2001

Before:  SUHRHEINRICH and SILER, Circuit Judges;
HOOD, District Judge.

———————————

**COUNSEL**

**ARGUED:**  Gregory J. Reed, GREGORY J. REED &
ASSOCIATES, Detroit, Michigan, for Appellants. Herschel
P. Fink, HONIGMAN, MILLER, SCHWARTZ & COHN,
Detroit, Michigan, for Appellees. **ON BRIEF:**  Gregory J.
Reed, GREGORY J. REED & ASSOCIATES, Detroit,
Michigan, for Appellants.  Herschel P. Fink, Cynthia G.
Thomas, HONIGMAN, MILLER, SCHWARTZ & COHN,
Detroit, Michigan, Gregory M. Kopacz, DYKEMA
GOSSETT, PLLC, Bloomfield Hills, Michigan, for
Appellees.

———————————

**OPINION**

———————————

JOSEPH M. HOOD, District Judge.  Plaintiffs appeal the
district court's dismissal of their claims in this tort action
based on the airing of a mini-series about the Temptations.
For the reasons which follow, we **AFFIRM.**

———————————

* The Honorable Joseph M. Hood, United States District Judge for the
Eastern District of Kentucky, sitting by designation.

The district court recognized that plaintiffs' claims under
this theory of recovery varied slightly from one another, but
that defendants' actions in this case "were not tortious in any
sense, and certainly cannot be reasonably considered
outrageous."  J.A. 149, district court's opinion and order of
February 3, 2000, p. 19.  Assuming that there are inaccuracies
in the mini-series as alleged by the plaintiffs, the district court
determined that these inaccuracies "cannot be considered so
extreme in degree as to go beyond all possible bounds of
decency."  *Id.*

The Ruffin plaintiffs disagree, stating that the manner in
which David Ruffin's death was depicted was so traumatic for
them to watch that they later required medical treatment, and
the intentional misrepresentation of his death was outrageous
and extreme.  Furthermore, plaintiffs allege that the portrayal
of Earline Ruffin as a prostitute and an unchaste woman is
highly offensive to a reasonable person.  Hence, they argue
that the dismissal of their claims for intentional infliction of
emotional distress was erroneous.[5]

Defendants argue that the mini-series is similar to
statements contained in broadcasts and publications which
generally do not constitute extreme or outrageous conduct.
*See Ross v. Burns*, 612 F.2d 271, 273-74 (6th Cir.
1980)(finding newspaper's publication of photograph of
undercover narcotics officer was not extreme and
outrageous); *Fry v. Ionia Sentinel-Standard*, 300 N.W.2d 687
(Mich. Ct. App. 1980)(finding that an article reporting that
the body of plaintiff's husband was removed from a cottage
destroyed by fire along with the body of another woman he
had been seen with at a local bar was not extreme).  They

[5]Neither Josephine Miles nor Rose Franklin appealed the grant of
summary judgment on their claims of intentional infliction of emotional
distress.

Michigan law applies to a case unless there is a rational reason to displace it. *See Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). If a foreign state has an interest in having its law applied, a determination is made whether Michigan's interests require that Michigan law be applied. *See id.* Defendants argue that Michigan has neither contacts nor an interest in having its law applied because the mini-series was a nationwide broadcast. Thus, they assert that the only state with an interest in this claim is that of Mississippi, Earline Ruffin's domicile.

Moreover, defendants argue that even if Alabama law applied, rather than that of Mississippi, the defamation claim was properly dismissed. Specifically, they point to Ala. Code § 6-5-462 which provides that injuries to one's reputation do not survive a deceased plaintiff. *See also Fitch v. Voit*, 624 So.2d 542, 543-44 (Ala. 1993).

The death certificate is somewhat confusing as to whether Earline Ruffin was domiciled in Mississippi or Alabama when she died. However, her complaint indicates that she was a resident of Meridian, Mississippi at the time this case began. *See* J.A. 87, Ruffin plaintiffs' complaint, p. 4, ¶ 11. The district court did not err in determining that Michigan law did not apply to her cause of action, and under Mississippi law, Earline Ruffin's defamation claim was properly dismissed. Assuming Alabama law applies, the result would not change.

**D. Intentional infliction of emotional distress**

Under Michigan law, a *prima facie* case for intentional infliction of emotional distress requires the following elements: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Andrews v. Prudential Secs., Inc.*, 160 F.3d 304, 309 (6th Cir. 1998). Michigan law does not permit recovery when "mere insults, indignities...or other trivialities" occur as there "is no occasion for the law to intervene in every case where some one's feelings are hurt." *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 909 (Mich. 1985).

# I. INTRODUCTION

In November of 1998, National Broadcasting Company ("NBC") aired a four-hour mini-series depicting the Temptations as recounted in a novel written by Otis Williams, a founding member of the legendary recording group. Plaintiffs in this action include Cheryl Ruffin-Steinback, individually and as representative of the estate of Davis E. Ruffin, lead singer of the group from 1964 to 1968 who was known professionally as David Ruffin; Nedra Ruffin, Kimberly Bogan, and David Ruffin, Jr., the children of Davis Ruffin; Earline Ruffin, the mother of Davis Ruffin; Rose Franklin, the mother of Melvin Franklin, a member of the group; Josephine Miles, the first wife of Otis Williams; and Johnnie Mae Mathews, the first agent of the Temptations.[1]

Plaintiffs have appealed only their state law tort claims for violation of the right of publicity, unjust enrichment, defamation, and intentional infliction of emotional distress against Defendants dePasse Entertainment, NBC, David Picker, and Hallmark Entertainment, Inc. Defendants Suzanne dePasse, Otis Williams, Shelly Berger, and Characters Unlimited were never served with the complaint and have been dismissed from this case.

# II. ISSUES

(1) Whether the district court properly dismissed plaintiffs' claims for violation of their rights of publicity or commercial appropriation as a matter of law.

(2) Whether the district court properly found plaintiffs' claims of unjust enrichment insufficient as a matter of law.

(3) Whether the district court properly found Earline Ruffin's claim of defamation failed to survive her death as a matter of law.

---

[1] The district court permitted Johnnie Mae Mathews's claims of defamation and false light invasion of privacy to proceed.

(4) Whether the district court properly found the Ruffin plaintiffs' claims of intentional infliction of emotional distress were insufficient as a matter of law.

## III. BACKGROUND

The mini-series at issue in this case relates the story of the Temptations from the group's beginning until the present and is based on a novel written by Otis Williams. It details portions of the lives of its members, their families, and those having business relationships with the Temptations. Only Williams was compensated for the mini-series, and the plaintiffs allege that any use of their likenesses through actor portrayals was without their permission. The airing was so successful that video cassettes of the mini-series were available for purchase or rental.

Plaintiffs filed three complaints in Michigan state court, and the action was removed by defendants to federal court.[2] The Ruffins' complaint objected to the depiction of David Ruffin's final moments in the mini-series in which his beaten body was thrown from a moving car in front of a hospital where he dies. According to the mini-series, his body remained unclaimed in a morgue for a week after his death. Plaintiffs state that he was taken to the hospital by a limousine and was escorted to the waiting area by his driver who informed the attendants of his identity. The Ruffin children further state that his body was claimed by one of them within a few days after his death. The children also object to the portrayal of David Ruffin in the mini-series as single and childless while all the other members of the Temptations were shown with wives and children. Earline Ruffin alleges she was falsely portrayed as a prostitute because David Ruffin's

[2]Josephine Miles and Rose Franklin each filed separate complaints, while the Ruffins filed a joint complaint.

## C. Defamation

Only Plaintiff Earline Ruffin appeals the dismissal of her claim of defamation. This claim is based on the remark by the actor portraying her son that he was given to a pimp because his mother owed the pimp money. Noting that the Restatement (Second) of Conflict of Laws § 150 cmt. e (1971) suggests that "in the case of multistate publication of defamatory material, plaintiff's domicile will ordinarily be the state with the greatest interest in having its law applied[,]" the district court determined that the law of Mississippi, where Earline Ruffin was domiciled, was applicable to her claim. *See* J.A. 147, district court's opinion and order of February 3, 2000, p. 17. Mississippi law, as outlined in *Catchings v. Hartman*, 174 So. 553 (Miss. 1937), does not permit this type of cause of action to survive a plaintiff's death even if the case was filed prior to the death of the plaintiff. Because Earline Ruffin passed away on August 15, 1999, the district court granted defendants' motion to dismiss her claim of defamation.

The Ruffin plaintiffs argue that Earline Ruffin's death certificate indicates she died in Alabama, and that she was a former resident of Mississippi. *See* J.A. 427, Earline Ruffin's death certificate. Therefore, it is asserted that Alabama law is applicable to her case.[4]

*Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.* 313 U.S. 487, 496 (1941), holds that in diversity cases, the choice of law rules applied by the federal court must conform to those of the state in which it sits. Michigan's choice of law rule, as noted by defendants, provides that there is a presumption that

[4]In the district court, the Ruffin plaintiffs argued that the more favorable Michigan law applied because several of Earline Ruffin's prospective heirs were residents of Michigan. The district court held that "[s]uch an interest is too remote to outweigh Mississippi's traditional interest in having its law applied to defamation regarding its residents." J.A. 147, district court's opinion and order of February 3, 2000, p. 19. This argument is not revived on appeal.

purposes, which is distinguished from a public interest publication. *See Pallas v. Crowley, Milner & Co.*, 33 N.W.2d 911, 917 (Mich. 1948)(recognizing "a fundamental difference between the use of a person's photographic likeness" for a newsworthy purpose and a commercial use such as an advertisement). Therefore, defendants state that consent or permission from plaintiffs was not required, and plaintiffs have cited no legal authority to support their claims.

There is relatively no case law cited by plaintiffs to support their claims, and their argument under this tort is very weak. The majority of cases which discuss the right of publicity, including *Carson* from this circuit, focus on the pecuniary interest in one's identity. We conclude that the use of plaintiffs' fictionalized likenesses in a work protected by the First Amendment and the advertizing incidental to such uses did not give rise to a claim for relief under the plaintiffs' rights of publicity for the reasons stated by the district court.

## B. Unjust enrichment

Based on the averments in the complaints, the district court found plaintiffs' claims of unjust enrichment to be duplicative or derivative of their right of publicity claims and dismissed them, referencing the reasons given for dismissal of the right of publicity claims. Plaintiffs decline to offer a distinction between the claims and instead refer to their arguments supporting their right of publicity claims as to why the district court erred in granting defendants' motions to dismiss.

A review of the complaints in this case indicates that the allegations under the right of publicity claims and the unjust enrichment claims are duplicative. The Ruffin plaintiffs' complaint even uses the phrase "enrich themselves unjustifiably" in discussing their right of publicity claims. J.A. 94, Ruffins' complaint, p. 11, ¶ 54. Finding no error in the district court's resolution of the plaintiffs' right of publicity claims, we likewise find no error in the district court's treatment of the plaintiffs' claims of unjust enrichment.

character indicated that he was given to a pimp by his mother to settle a debt.[3]

Rose Franklin disputes the manner in which the mini-series depicted the final days of her son, Melvin. She states that rather than being confined to a wheelchair and dying in her home, her son died in his sleep at his home in California.

Josephine Miles disagrees with the way the mini-series portrayed her ex-husband Otis Williams as a better father and husband than he was. She feels this gives her less credit for the raising of their son. She also objects to the implication that she was involved with another man during her marriage to Williams.

Defendants filed motions to dismiss the complaints pursuant to Fed. R. Civ. P. 12(b)(6) which were followed by several hearings wherein the parties submitted documentary evidence in support of their positions. The district court considered this evidentiary material in ruling on some of plaintiffs claims, resulting in dismissal of their claims under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56(c), the summary judgment standard.

## IV.  STANDARDS OF REVIEW

This court reviews *de novo* a district court's dismissal under Fed. R. Civ. P. 12(b)(6). *See Varljen v. Cleveland Gear Co., Inc.,* 250 F.3d 426, 429 (6th Cir. 2001). The court must "consider as true the well-pleaded allegations of the complaint and construe[] them in the light most favorable to the plaintiff[s]." *Id.*

A grant of summary judgment by the district court is also reviewed *de novo*, *Brody v. City of Mason*, 250 F.3d 432, 436-37 (6th Cir. 2001), with all evidence viewed "in the light most favorable to the party opposing summary judgment[,]"

---

[3]Earline Ruffin was a minister's wife and school teacher for forty years. She raised David Ruffin but was not his biological mother.

*White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. 1994). Summary judgment is appropriate only where there are "no issues of material fact present and the moving party is entitled to judgment as a matter of law." *Id.* at 231.

## V.  DISCUSSION

Because this is a diversity action removed from Michigan state court, the district court applied Michigan law to all of plaintiffs' claims except for the defamation claim asserted by Earline Ruffin.

## A.  Right of publicity

The right of publicity is defined as "an appropriation of one's name or likeness for the defendant's advantage." *Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 834 (6th Cir. 1983). The purpose of this right is "to protect the commercial interest of celebrities in their identities[,]", *id.* at 835, as "[t]he famous have an exclusive legal right during life to control and profit from the commercial use of their name and personality[,]" *id.* (quoting *Memphis Dev. Found. v. Factors Etc., Inc.*, 616 F.2d 956, 957 (6th Cir. 1980)).

The district court rejected plaintiffs' claims of violation of their rights of publicity on the basis that depicting one's life-story without his or her permission did not constitute a violation of the right of publicity under Michigan law. *See* J.A. 141, district court's opinion and order of February 3, 2000, p. 11. At the time of this ruling, the Michigan Supreme Court had not addressed this tort, and the lower Michigan courts had only noted that it was among the types of "invasion of privacy" rights recognized under Michigan law. In drawing this conclusion, the district court relied in part on the Restatement (Third) of Unfair Competition which noted in § 47 that use of identity "for the purposes of trade does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses."

The district court also focused on *Matthews v. Wozencraft*, 15 F.3d 432 (5th Cir. 1994), in which an ex-husband alleged misappropriation of his name and likeness by his ex-wife and a movie studio when events of his life as a police officer, some of which were fictionalized, were sold as movie rights. His claim for violation of his right of publicity was denied by the Fifth Circuit which held that the term "'likeness' does not include general incidents from a person's life, especially when fictionalized. The narrative of an individual's life, standing alone, lacks the value of a name or likeness that the misappropriation tort projects." *Id.* at 438. A similar claim brought by a former Black Panther against the producers of a film depicting a fictionalized account of his life story was rejected in *Seale v. Gramercy Pictures*, 949 F.Supp. 331 (E.D. Pa. 1996).

Plaintiffs argue that the district court misinterprets their position and has reduced their claims to the narrow notion that the defendants only depicted their life stories without their consent. They allege that their life stories were not told in the mini-series, but instead their identities were used as colorful props to make Otis Williams's life story more entertaining and appealing. Plaintiffs state that this court's holding in *Carson v. Here's Johnny Portable Toilets, Inc.* provides them with relief, and that the district court erred by dismissing their claims for failure to state a cause of action.

Defendants assert that the First Amendment defeats plaintiffs' right of publicity claims because the mini-series is a movie concerning a musical group where there is public interest, and is not a commercial advertisement for the sale of goods. Defendants argue that the First Amendment bars claims for right of publicity where the publication is a matter of public interest, and that it has long been settled that "motion pictures are a form of expression protected by the First Amendment." *Rogers v. Grimaldi*, 695 F.Supp. 112, 116 (S.D.N.Y. 1988).

Defendants note that both the Restatement (Third) and *Carson* focus on identity appropriation for commercial