**Gary BROWN, Plaintiff,**

v.

**Resident Unit Manager SCOTT, Defendant.**

No. 02–10160–BC.

United States District Court, E.D. Michigan, Northern Division.

July 26, 2004.

Gary Brown, Standish, MI, pro se.

Julia R. Bell, Michigan Department of Attorney General, Lansing, MI, for Defendants.

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

LAWSON, District Judge.

The plaintiff, Gary Brown, presently incarcerated at the Standish Maximum Correctional Facility, in Standish, Michigan, has filed a *pro se* complaint against the defendant, Ivan Scott, a resident unit manager at the St. Louis Correctional Facility in St. Louis, Michigan, alleging a deprivation of his constitutional rights under the Cruel and Unusual Punishment Clause of the Eighth Amendment, via 42 U.S.C. § 1983. The plaintiff contends that the defendant was deliberately indifferent to his health and safety as an inmate when he did not accede to the plaintiff's request to transfer him away from a cell mate who was rumored to be a predatory homosexual rapist. The plaintiff was forcibly raped by the cell mate three days after he made his request of the defendant. The defendant has filed a motion to dismiss and for summary judgment on the basis that he is entitled to qualified immunity from the plaintiff's suit.

On July 24, 2003, Magistrate Judge Charles E. Binder, operating under an order of reference to conduct all pretrial proceedings, filed a report recommending that the defendant's motion to dismiss and for summary judgment be denied. The defendant has filed an objection to the recommendation, and the Court has conducted a *de novo* review of the motion papers, the report and recommendation, and the defendant's objections. The Court finds that the plaintiff has stated a claim under the Eighth Amendment and has demonstrated a genuine factual dispute relating to whether the defendant committed acts that allegedly violated clearly established rights. The Court will therefore adopt the report and recommendation and deny the defendant's motion to dismiss and for summary judgment based on qualified immunity.

### I.

The defendant has not objected to the summation of the relevant facts provided by the magistrate judge, which the Court adopts and reiterates as follows:

This case arises out of an incident that occurred while the plaintiff was incarcerat-

ed at the St. Louis Correctional Facility in St. Louis, Michigan. The plaintiff claims that on February 4, 2000, after learning of a new cell assignment, he was warned by another inmate that his new cellmate was a known homosexual, "who used his superior size and strength to force other prisoners into sexual acts with him." Compl. at ¶ 13. The plaintiff therefore went to see the defendant, the resident unit manager at the prison, and asked for another cell assignment, making "it very clear to him I was very much concerned and in fear for my safety due to being housed with this other prisoner." *Id.* at ¶ 15. The plaintiff claims that the defendant asked him whether his cellmate had solicited him for sex, or threatened him with harm if he would not engage in sexual acts, and the plaintiff told the defendant that neither of these had occurred as of yet. According to the plaintiff, the defendant stated that he would look into the situation. On February 7, 2000, however, the plaintiff was sexually assaulted by this cellmate. *See* Def.'s Mot. to Dismiss and for Summ. J. Ex. B (Incident Report).

The plaintiff filed his *pro se* complaint on May 23, 2002 alleging that the defendant was deliberately indifferent to his health and safety by failing to protect him from his cellmate. The complaint originally named other defendants, but all of the defendants except for defendant Scott were dismissed from the case pursuant to an order from this Court on December 17, 2002. The plaintiff requests in his complaint the issuance of declaratory and injunctive relief, as well as compensatory and punitive damages.

The defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b) and for summary judgment under Rule 56(b) on the ground of qualified immunity. In his motion, the defendant argues that the undisputed facts do not demonstrate a violation of the plaintiff's clearly established Eighth Amendment rights. The defendant filed a supporting affidavit in which he avers that after he had approved a change in the plaintiff's housing assignment, the plaintiff approached him and "indicated that he did not want to lock in his assigned cell and wanted to move to a different cell" because the plaintiff "had heard a rumor about his new cell mate and feared a possible attack." Def.'s Mot. to Dismiss and for Summ. J., aff. of Ivan Scott at ¶ 5. The defendant states that he asked the plaintiff "if he had been solicited for sex or threatened with harm to perform sex and whether he was requesting protection from his cell mate," to which the plaintiff answered, "no." *Id.* at ¶ 6. The defendant then informed the plaintiff that he would look into his concern about the cell mate. *Id.* at ¶ 7. The defendant reviewed the plaintiff's cell mate's file and found that the cell mate was not designated a homosexual predator and, pursuant to Michigan Department of Correction (MDOC) policy, the cell mate was eligible to be placed in a multiple occupancy setting. Under the MDOC policy, a prisoner designated as a homosexual predator could not be placed in a "double-bunked" cell or room. *See* Def.'s Mot. Ex. A (MDOC Policy Directive 05.01.140) at ¶ KK. The policy defines "homosexual predator" as "a prisoner who has a documented conviction, finding of guilt on a major misconduct, or other verifiable supporting documentation contained in the prisoner's file (e.g. jail reports) which establishes the use of force or threat of force to commit or attempt to commit a non-consensual sexual act with a victim of the same sex who is at least 14 years of age." *Id.* at ¶¶ LL.

The defendant contends that his actions in not placing the plaintiff in a different cell were a reasonable response to the plaintiff's concerns about the rumor he heard, and that at no time did he violate

the plaintiff's constitutional rights by consciously disregarding a known substantial risk of serious harm to the plaintiff's health or safety. The defendant states that had the plaintiff requested protection, the plaintiff immediately would have been removed from his cell pursuant to MDOC policy. Pursuant to MDOC policy, "[a] prisoner who requests protection shall immediately be placed in a temporary segregation cell or other suitable location and a Notice of Intent to Classify to Segregation form (CSJ–447) shall be completed. An investigation shall be conducted for every voluntary and involuntary protection case to establish the basis of the prisoner's need for protective segregation. The investigation shall be documented in writing and provided to the deputy warden who shall provide a copy to the hearing officer of SCC, if necessary." Def.'s Mot. Ex. C (MDOC Policy Directive 04.05.120) at ¶ Q. However, according to the defendant, the plaintiff did not seek protection, but rather he requested a change in cell assignment based upon an unverified statement he had heard from another prisoner.

In response to the defendant's motion, the plaintiff asserts that material facts are in dispute that prevent the Court from granting summary judgment. The plaintiff contends that members of the correctional facility staff have a duty to identify prisoners who are assaultive or predatory, and that the defendant failed to so identify the cell mate in question even though he was affiliated with a group called the "Moabites," who, according to the plaintiff, are "well known for preying upon 'young[,]' white[,] vulnerable inmates." Pl.'s Br. in Opposition to Def.'s Mot. at 2. The plaintiff states:

> [The] defendant was put on notice that there was indeed a high risk that plaintiff could pretty well be sexually assaulted by a well known member of the "MOABITES" who the entire prison system has long ago been duly aware that these particular individuals [are] known for either assaulting or having some young vulnerable white inmate assaulted; still he did nothing by way of even remotely preventing said assault (i.e. by either moving plaintiff or the offender; failed to segregate plaintiff; as well as failed to alert staff of a possibility of an assault).

*Id.* at 3 (punctuation altered). The plaintiff also contends that "[s]imply because nothing with the [cell mate's] file listed him as a predatory rapist" did not mean that the cell mate was not a homosexual predator, and even though the plaintiff did not request voluntary segregation, the defendant should have placed him in involuntary segregation upon hearing the plaintiff's concerns for his safety.

In his report and recommendation, the magistrate judge suggested that the plaintiff's version of the facts, viewed in the light most favorable to him, supported the inference that the defendant had knowledge of a substantial risk of serious harm to the plaintiff's health or safety and that he did not respond reasonably to that risk. The magistrate judge also suggested that a reasonable trier of fact could conclude that the defendant should have taken additional steps, such as questioning the other inmate who warned the plaintiff that he was in danger of sexual assault, to learn the basis for the warning. The magistrate judge further suggested that the right of an inmate to be protected from an attack was a clearly established right. Thus, the magistrate judge concluded that the plaintiff's version of the facts could be viewed to state an Eighth Amendment violation, and because the plaintiff's rights were clearly established, the defendant was not entitled to qualified immunity.

In his objections to the recommendation, the defendant argues that the risk to the plaintiff's safety was not "obvious." Had the risk been obvious, contends the defendant, the plaintiff undoubtedly would have perceived the obviousness of the risk and requested placement in protective segregation. Moreover, the defendant argues that it was not reasonable under the circumstances of this case for him to place the plaintiff in involuntary segregation since MDOC staff must possess "facts" more than just unsubstantiated rumors about fellow prisoners to demonstrate a need for segregating the inmate involuntarily under MDOC policy 04.05.120. The defendant also argues that the magistrate judge improperly suggested that, in hindsight, the defendant could have taken additional steps to secure the safety of the plaintiff since the plaintiff alleges that his assailant was a "Moabite" and "Moabites" regularly assaulted white inmates. Absent any factual basis on which to conclude that the plaintiff was at risk, the defendant contends that the Court should not use hindsight in inapplicable cases to create a genuine issue of material fact.

## II.

The defendant's motion to dismiss is brought under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege facts that if proved would result in the requested relief. *Helfrich v. PNC Bank, Kentucky, Inc.,* 267 F.3d 477, 480 (6th Cir.2001). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). Where the plaintiff offers multiple factual scenarios for a particular claim, only one need be sufficient. *Briggs*

*v. Ohio Elections Comm'n,* 61 F.3d 487, 494 (6th Cir.1995).

When considering a motion under Rule 12(b)(6), the district court must construe the plaintiff's well-pleaded allegations in the light most favorable to the plaintiff and accept the allegations as true. *Ruffin–Steinback v. dePasse,* 267 F.3d 457, 461 (6th Cir.2001). However, the district court need not accept legal conclusions unsupported by the facts pleaded. *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir.1996). More ordinarily is required to satisfy the federal notice pleading requirements. *Scheid,* 859 F.2d at 436 (citing 5A C. Wright & A. Miller, Federal Practice & Procedure § 1357, at 596 (1969)). Although it is generally improper to consider matters outside of the pleadings on a motion to dismiss, that rule does not apply to documents referenced by the pleadings themselves that are central to the plaintiff's claim. *Greenberg v. Life Ins. Co. of Va.,* 177 F.3d 507, 514 (6th Cir.1999).

In this case, the defendant had filed an affidavit in support of his motion and sought relief in the alternative under the summary judgment rule. A motion for summary judgment under Federal Rule Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the

just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotes omitted).

A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 581 (6th Cir.2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler,* 215 F.3d 594, 599 (6th Cir.2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.,* 14 F.3d 1143, 1148 (6th Cir.1994) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Ctr. v. Shalala,* 205 F.3d 937, 943 (6th Cir.2000). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Simmons–Harris v. Zelman,* 234 F.3d 945, 951 (6th Cir.2000). Thus a factual dispute which "is merely colorable or is not significantly probative" will not defeat a motion for summary judgment which is properly supported. *Kraft v. United States,* 991 F.2d 292, 296 (6th Cir.1993); *see also Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. BVR Liquidating, Inc.,* 190 F.3d 768, 772 (6th Cir.1999).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.,* 276 F.3d 845, 848 (6th Cir.2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. If the nonmoving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Napier v. Madison County, Ky.,* 238 F.3d 739, 741–42 (6th Cir.2001).

The party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt,* 226 F.3d 506, 511 (6th Cir.2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 895 (6th Cir.1991).

The defendant claims that he is entitled to a dismissal on the basis of qualified immunity because the undisputed facts do not demonstrate a violation of the plaintiff's clearly established Eighth Amendment rights. The affirmative defense of qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, a corrections officer may be entitled to qualified immunity from suit even if he actually violated the plaintiff's constitutional rights, since "reasonable mistakes can be made as to the legal

constraints on particular [official] conduct." *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

██ To determine if qualified immunity attaches, this Court employs the sequential analysis prescribed by the Supreme Court in *Saucier. See Greene v. Barber*, 310 F.3d 889, 894 (6th Cir.2002). First, the Court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. *Dean v. Byerley*, 354 F.3d 540, 557 (6th Cir.2004); *see Saucier*, 533 U.S. at 201, 121 S.Ct. 2151 ("If no constitutional right would have been violated were the allegations [in the complaint] established, there is no necessity for further inquiries concerning qualified immunity."). Second, the court considers whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Dean*, 354 F.3d at 557. Third, the court determines whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Ibid.*

██ As the magistrate judge observed, qualified immunity may be raised at various stages of the proceedings. If a motion to dismiss is made before discovery, then the court evaluates the pleadings to determine whether the plaintiff has alleged facts showing a violation of a constitutional right, and then the court examines the jurisprudence to determine if that right was clearly established at the time. *See Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). If the motion is made after discovery or the defendant relies on matters outside the pleadings, then the court applies traditional summary judgment procedure to determine whether the plaintiff has presented a jury-submissible issue on the matter of the defendant's violation of a clearly established constitutional right. *See Flint ex rel. Flint v. Kentucky Dept. of Corrections*, 270 F.3d 340, 348–49 (6th Cir.2001). Well pleaded facts are accepted as true in the Rule 12(b) context, and the court views the evidence including reasonable inferences in the light most favorable to the plaintiff.

"The defendant bears the initial burden of coming forward with facts to suggest that he or she acted within the scope of his or her discretionary authority during the incident in question." *Flint*, 270 F.3d at 347. "The burden then shifts to the plaintiff to establish that the defendant's conduct violated a right so clearly established that any official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct". *Id.* (citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992)). "The ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Flint*, 270 F.3d at 347 (citing *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991)). Although the policy of the Sixth Circuit is to resolve immunity questions at the earliest possible stage of the litigation, "[s]ummary judgment is not appropriate if there is a genuine factual dispute relating to whether [the defendant] committed acts that allegedly violated clearly established rights." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir.), *cert. denied*, 534 U.S. 1071, 122 S.Ct. 678, 151 L.Ed.2d 590 (2001).

A.

██The Court must first determine whether a constitutional violation occurred, that is, whether, taking the facts in the light most favorable to the plaintiff, the defendant may be held liable for subjecting the plaintiff to cruel and unusual pun-

ishment as proscribed by the Eighth Amendment. Prison officials have a duty to protect prison inmates under their supervision from intentional violence visited upon them by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, despite this duty, not every prisoner assault will give rise to a constitutional violation. In this case, the plaintiff does not allege that the defendant himself performed an act of cruelty upon the plaintiff, but rather the defendant lodged the plaintiff in a cell with a fellow inmate known to be dangerous and predatory, and that the inevitable happened when the assault occurred. "Where the harm is perpetrated by another prisoner, rather than by a government official, the claim is characterized as one of 'conditions of confinement,' rather than of 'excessive use of government force.'" *Flint*, 270 F.3d at 352 (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 400–01 (6th Cir.1999)).

To succeed on a conditions of confinement claim, a plaintiff must show: "(1) the deprivation alleged is objectively 'sufficiently serious,' and (2) the prison official had a sufficiently culpable state of mind." *Flint*, 270 F.3d at 352 (citing *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970). "A sufficiently culpable state of mind is one of 'deliberate indifference' to inmate health and safety." *Ibid.* In defining deliberate indifference, the Supreme Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official *knows* of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; *see also Thaddeus–X*, 175 F.3d at 402. The test for deliberate indifference contains both a subjective and an objective component. *Farmer*, 511 U.S. at 837–38, 114 S.Ct. 1970.

Undertaking the analysis of the objective element set forth in *Farmer*, it is plain that the harm caused to the plaintiff was sufficiently serious. The plaintiff was sexually assaulted. The magistrate judge observed that forcible rape is a serious injury, R & R at 12, and the defendant takes no issue with that finding.

■ As to the state of mind element—whether there was a deliberate indifference to inmate health and safety—the Court agrees with the magistrate judge and finds this requirement has been met. The plaintiff alleges that it was common knowledge in the prison that inmates belonging to a group called the "Moabites" regularly assaulted vulnerable white inmates, and it was also well known that the plaintiff's new cell mate was a Moabite. Considering this alleged fact, along with the rumor that the plaintiff's cell mate was a known homosexual who forced other inmates to have sex with him, a trier of fact could reasonably find that the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm to the plaintiff existed, and the defendant disregarded the risk by not transferring the plaintiff or segregating him from his cell mate. These material facts, presently in dispute, reasonably support the inference that the defendant was deliberately indifferent to the plaintiff's health and safety when he responded to the plaintiff's fears and pleas for a different cell mate by merely checking a file to see if the cell mate had already been labeled a "sexual predator."

In his objections, the defendant states that the risk to the plaintiff was not "obvi-

ous" to him and under the circumstances, his action in not placing the defendant in involuntary segregation was reasonable because the plaintiff did not request voluntary segregation, and the plaintiff's fear was only based on an unsubstantiated rumor of a possible assault. Pursuant to an MDOC policy, the defendant claims that a prison official must possess more facts than a rumor before segregating an inmate involuntarily. Thus, the defendant contends that he was not subjectively or objectively indifferent to the plaintiff's health or safety.

As the defendant points out, pursuant to MDOC policy 04.05.120, which is entitled "Segregation Standards," a prisoner is entitled to a hearing before prison officials are allowed to place the prisoner in involuntary segregation. *See* Def.'s Mot. to Dismiss and for Summ. J. Ex. C at ¶¶ H, S. The officer conducting the hearing must review the grounds for involuntary segregation and issue a decision, which the prisoner may appeal to a hearings administrator. *See id.* at ¶¶ M–N. Were this the only method by which a prison official could place an inmate in involuntary segregation, the defendant may well have a case that it was not reasonable to place the plaintiff in involuntary segregation based on a rumor from another inmate. However, the segregation policy also allows prison officials to place prisoners in "protective segregation." According to the policy, protective segregation is "voluntary or involuntary placement in a segregation unit to provide physical separation of an individual prisoner from the general population." *Id.* at ¶ F. Moreover, a prison official may place an inmate in "temporary segregation" without having to go through the hearing process if the segregation is not "longer than four consecutive business days." *Id.* at ¶ G. Thus, a reasonable trier of fact could find that the defendant in this case could have placed the plaintiff in protective segregation, regardless of the voluntariness of the action, or placed the plaintiff in temporary segregation while the matter was investigated. It is true that the plaintiff could have simply invoked his right to be segregated from his new cell mate and avoided the incident, but the fact that the plaintiff did not make this choice does not excuse or immunize the defendant's own conduct if it amounts to a violation of the Constitution.

This Court, therefore, determines, under the first prong of the test for qualified immunity, that the plaintiff has demonstrated a genuine factual dispute relating to whether the defendant committed a constitutional violation. As such, the Court also finds that the plaintiff has stated a claim under the Eighth Amendment upon which relief can be granted.

### B.

Turning to the second prong of the test, the Court must determine whether the defendant, as of February 7, 2000, the date of the plaintiff's rape, violated a right that was clearly established. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see Walton v. City of Southfield,* 995 F.2d 1331, 1335 (6th Cir.1993). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034 (citations omitted). Thus, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151.

"It is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts." *Greene*, 310 F.3d at 894. "If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151.

When determining whether a right is "clearly established," this Court must look "first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits." *Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir.1991). *See Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir.1988).

■ The Court agrees with the magistrate judge's conclusion that the plaintiff's rights were clearly established by at least 1994, when the Supreme Court held that a prisoner may bring a claim against a prison official, based on harm perpetrated by a fellow inmate, if the prison official acted deliberately indifferent "to inmate health and safety." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. Accordingly, the Court concludes that reasonable prison officials would have known in February 2000 that they were violating a clearly established right by not affording protection to the plaintiff.

### C.

Under the final prong of the test for qualified immunity, the Court must determine whether the plaintiff has offered sufficient evidence to indicate that what the defendant allegedly did was objectively unreasonable in light of the clearly established constitutional rights. The Court finds that the facts viewed in the light most favorably to the plaintiff establish that the defendant acted objectively unreasonably in light of *Farmer* and subsequent Eighth Amendment jurisprudence in failing to protect the plaintiff from a substantial risk of harm presented by the plaintiff's cell mate. The plaintiff clearly informed the defendant that he feared his cell mate might assault him, yet the defendant only checked the cell mate's prison file to see if the cell mate was classified as a homosexual predator. As mentioned previously, if the cell mate was "commonly known" to be a member of group known to assault white inmates, and the plaintiff relayed the rumor to the defendant that his cell mate was known to sexually abuse other inmates, the defendant should have taken further action to assure the plaintiff's safety under these circumstances. The failure to do so with that knowledge constitutes deliberate indifference to the plaintiff's safety, and the failure to protect him from ensuing rape perpetrated by the plaintiff's cell mate amounts to cruel and unusual punishment. Because the defendant took no further action, the Court concludes that the defendant acted objectively unreasonably under the third prong of the test for qualified immunity.

### III.

The Court finds that the defendant is not entitled to qualified immunity from the plaintiff's Eighth Amendment cruel and unusual punishment claim.

Accordingly, it is **ORDERED** that the magistrate judge's Report and Recommendation [dkt # 29] is **ADOPTED**.

It is further **ORDERED** that the defendant's motion to dismiss and for summary judgment [dkt # 25] is **DENIED**.

It is further **ORDERED** that the plaintiff's motion to file a reply to the defendant's objections to the report and recommendation [dkt # 39] is **DENIED** as moot.

The Count intends to explore the possibility of appointing counsel for the plaintiff from the Court's list of *pro bono* volunteer attorneys. The Court, therefore, will vacate the order of reference for general case management and stay discovery until counsel is appointed.