LAURIE J. MICHELSON, U.S. DISTRICT JUDGE
Johana Arucan, proceeding pro se , sued her employer for discrimination and *324 wrongful termination. She also sued two police officers who were called to remove her from the premises for constitutional violations. (R. 5.) The Court referred all pretrial matters to Magistrate Judge Stephanie Dawkins Davis. (R. 10.)
Now before the Court are Arucan's objections to the Magistrate Judge's Report and Recommendation to grant Defendants' motions for summary judgment. (R. 73.) For the reasons set forth below, the Court overrules Arucan's objections and accepts the Report.
I.
Arucan began working for Cambridge East Healthcare in September 2012 as a full-time physical therapy assistant. (R. 50-6, PID 308.)
Over three years later, on January 5, 2016, Arucan provided physical therapy treatment to the wrong patient. (R. 52-6, PID 556.) Arucan usually treated only patients on her daily list, which did not include Catherine Y. (R. 71-3, PID 751, 753-54) But because she had extra time (two of her patients did not need services), another physical therapist asked Arucan to treat Catherine Y. (See id. ) But Arucan treated Catherine B. She discovered the mistake the next day and immediately reported the error to Megan Mocny, the Rehabilitation Manager. (R. 50-6, PID 320, 332.) That same day, Mocny reported the incident to Paige VanTiem, the administrator at Cambridge East. (R. 52-6, PID 558.)
On the morning of January 8, 2016, VanTiem informed Arucan that she was being terminated for treating the wrong patient. (R. 52-8, 565.) VanTiem avers that Arucan refused to sign the termination papers and instead insisted that she was not terminated. (R. 52-6, PID 559.) As she continued to protest, VanTiem instructed Arucan to leave the premises. (Id. ) Arucan refused. (Id. ) Instead, she stated that she had patients to treat and left for the second floor. (Id. ) VanTiem managed to convince Arucan to go to the first floor, but Arucan continued to refuse to leave the premises. (Id. )
The Madison Heights Police Department was called. (R. 52-6, PID 559.) Officers John Heinrich and Rick Zamoski responded. (R. 50-3, PID 294; R. 50-4, PID 299.) VanTiem informed the officers that Arucan had been fired and was now refusing to leave. (R. 50-4, PID 299.) The officers claim they told Arucan she needed to leave the premises, but she refused to do so. (R. 50-3, PID 295; R. 50-4, 299.) Instead, she insisted that she needed to stay to see her patients. (R. 50-4, PID 299.) The officers warned Arucan multiple times that if she did not leave the premises she would be arrested. (R. 50-4, PID 299.) Still, Arucan balked. (Id. )
So Officer Heinrich handcuffed Arucan and transported her to the police station. (Id. ) The officers booked her (for trespassing) and placed her in a cell, where she remained until around lunch time. (R. 50-6, PID 335.) Arucan then went to lunch with some of her former co-workers. (R. 50-6, PID 323.)
Arucan has a different version of the events. She testified that "they said I was not fired" and that VanTiem was only going to talk to "corporate." (R. 50-6, PID 325.) She never heard that she was asked to leave. (R. 50-6, PID 324.) It was a janitor, according to Arucan, who called the police. (R. 50-6, PID 325.) When the police arrived, she told them that she wanted to go home and was going downstairs to collect her belongings. (R. 50-6, PID 334.) The officers never told her that she needed to leave. (R. 50-6, PID 334.) Officer Heinrich took her patient schedule from her pocket and gave it to either VanTiem or Mocny. (R. 50-6, PID 321.)
*325 Then Officer Heinrich pulled her hands behind her back and handcuffed her. (R. 50-6, PID 322.) Once at the station, the officers took her belongings, including her lab coat, and asked for $500 in bail. (R. 506-, PID 322.) She was then placed in a cold cell with only a smelly blanket to keep her warm. (R. 50-6, PID 335.) Around lunchtime, some of her former co-workers paid her bail and she left to have lunch with them. (R. 50-6, PID 335.)
Arucan testified that she had pain in her chest as a result of being handcuffed and that she went to urgent care that day and later sought medical treatment from a doctor. (R. 50-6, PID 332-33.) VanTiem took her jacket and lunch box, but those items were mailed to her a week later by Cambridge East. (R. 50-6, PID 326.) She further asserts that she was replaced with a younger male employee. (R. 5, PID 42.)
Arucan ultimately pled "no contest" to trespassing. (R. 50-11, PID 361.)
Arucan filed this lawsuit against her former employer, VanTiem, Mocny, and the two officers. (R. 1.) In her amended complaint, Arucan alleges that Cambridge East discriminated against her based upon her gender, age, color, race, and her ethnicity. (R. 5.) She further alleges wrongful termination, failure to promote, and retaliation. (Id. ) She also includes claims of intentional infliction of emotional distress and harassment based upon alleged verbal and emotional abuse during her time of employment. (Id. ) Against the officers, she alleges that she was never given her Miranda rights, she was unlawfully arrested, unnecessarily humiliated, handcuffed in a manner that caused her injury, and that she got cold in the cell because they took her lab coat. (Id. )
Both Cambridge East and the officers filed for summary judgment. (R. 50, 52.)
For the reasons that follow, the Court will accept the Magistrate Judge's Report and Recommendation to grant Defendants' motions for summary judgment.
II.
A.
This Court performs a de novo review of those portions of the Magistrate Judge's Report and Recommendation to which the parties have objected. See 28 U.S.C. § 636(b). The Court need not and does not perform a de novo review of the parts of the report to which Arucan does not object. Thomas v. Arn , 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Garrison v. Equifax Info. Servs., LLC , No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012).
B.
Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to Arucan. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); Redding v. St. Eward , 241 F.3d 530, 531 (6th Cir. 2001).
III.
Arucan makes 16 objections. But none concern the Magistrate Judge's legal analysis. Instead, they attempt to introduce new facts or arguments, put forth arguments *326 that have no bearing on the Report's recommendations, or re-state her summary judgment arguments without explaining how the Magistrate Judge erred in analyzing those arguments. (R. 77.) The Court will address each objection, but will combine them when they overlap.
A.
Arucan's first and fifteenth objections concern three court dates in Madison Heights, Michigan that Defendants allegedly failed to show up for in early 2016. (R. 77, PID 986, 992.) Given the time period, the Court assumes that Arucan is referring to her criminal trespassing case. (R. 50-11.) These objections do not affect the outcome of the Report. Defendants' attendance at Arucan's criminal proceedings has no bearing on Arucan's current Title VII claims against her employer and her constitutional claims against Officers Heinrich and Zamojski. The Court therefore overrules Arucan's first and fifteenth objections.
B.
Arucan's second, eighth and ninth objections are to the Report's treatment of her discrimination claims. (R. 77, PID 987, 989-90.) The Magistrate Judge found that Arucan did not identify any other employees who, like her, treated the wrong patient, and yet were not terminated. Thus, she could not make out a prima facie case of discrimination. (R. 73, PID 954-58.) And, further still, the Magistrate Judge found that Arucan failed to show that the reason Cambridge East gave for terminating her was pretext for discrimination. (R. 73, PID 957-58 (citing White v. Baxter Healthcare Corp , 533 F.3d 381, 393 (6th Cir. 2008).) Arucan does not argue that the Magistrate Judge erred in granting summary judgment on the record before her. Instead, Arucan asserts that other physical therapists who were white or male performed deficiently, received citations, and harmed patients even to the point of causing death, yet were not terminated from their employment. (R. 77, PID 987, 989-90.) These arguments were not raised before the Magistrate Judge and will therefore not be considered. Swain v. Comm'r of Soc. Sec. , 379 F. App'x 512, 517-18 (6th Cir. 2010) (citing Ward v. United States , 208 F.3d 216 (table) (6th Cir. 2000) ) ("[A] claim raised for the first time in objections to a magistrate judge's report is deemed waived.") ). Arucan's second, eighth and ninth objections are overruled.
C.
Arucan's third and fourteenth objections appear to be that the Magistrate Judge misread her complaint as stating that she was at the jail for 24 hours, when she actually wrote four hours, with a "greater than" (">") sign in front of it. (R. 77, PID 987, 992.) This does not affect the Report's recommendations and these objections are overruled.
D.
Arucan's fourth objection is that she did not receive the original CCTV footage of the incident in discovery. (R. 77, PID 988.) But Arucan's motion to compel discovery of the CCTV tapes was denied, (R. 66, 69) so this objection is also overruled.
E.
Arucan's fifth (and part of her third) objection asserts that she was not allowed to review her deposition transcript and that she was harassed during her deposition. (R. 77, PID 988.) This, like her other objections, does not contest a finding in the Report itself and has no bearing on the outcome of the Magistrate Judge's summary judgment analysis. It is overruled.
*327 F.
Arucan's sixth, seventh, eleventh, and sixteenth objections raise arguments not presented in the summary judgment briefing. (R. 77, PID 988-92.) Number six claims that Cambridge East purposefully confused her as to which patients she needed to treat so that they could terminate her, (R. 77, PID 988-89) and number seven contends she did not harm the patient she erroneously treated[1] (R. 77 PID 989). In her eleventh objection, she says for the first time that she was framed (R. 77, PID 990-91), and in her sixteenth that she was forced to sign some paperwork regarding her criminal trespassing charge[2] (R. 77, PID 992). As these arguments were not raised before the Magistrate Judge, they are deemed waived. See Swain , 379 F. App'x at 517-18. Her objections are overruled.
G.
Arucan's tenth objection (R. 77, PID 990) is not responsive to the Report and re-asserts issues that were sufficiently addressed in the Report (R. 73, PID 954-68). Her tenth objection is overruled.
H.
Arucan's twelfth and thirteenth (and part of her first and fourth) objections are, in essence, a recital of her unlawful arrest and excessive use of force claims. (R. 77, PID 986-88, 991.) Arucan fails to identify any error in the Magistrate Judge's ruling that Defendants were entitled to summary judgment on these claims. Eastern District of Michigan Local Rule 72.1(d) requires that objections not only specify the part of the report to which a person objects, but also the basis for that objection. E.D. Mich. L.R. 72.1(d). An objection, then, that fails to show any error in the Magistrate Judge's analysis is not entitled to relief. Adam v. Comm'r of Soc. Sec. , No. 14-14724, 2016 WL 1084681, at *3 (E.D. Mich. March 21, 2016) ; see also Howard v. Sec'y of Health and Human Servs. , 932 F.2d 505, 508-09 (6th Cir. 1991).
Even if this Court were to liberally construe Arucan's objections as challenging the Magistrate Judge's finding of no genuine issue of material fact, her objections would still fail. See Thomas v. Eby , 481 F.3d 434, 437 (6th Cir. 2007) ; see also Sellers v. Morris , 840 F.2d 352, 355 (6th Cir. 1988) (applying liberal pro se pleading standard to objections for habeas petitioner). Officers Henrich and Zamojski assert that they are entitled to qualified immunity on the excessive force and false arrest claims. (R. 50, PID 269-72.) Defendants are entitled to qualified immunity if "they did not violate any of [plaintiff's] constitutional rights or (2) the violated rights, if any, were not 'clearly established' at the time of the alleged misconduct." Ruffin v. Cuyahoga County, OH , 708 F. App'x 276, 278 (6th Cir. 2018) (citing Pearson v. Callahan , 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant , 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).
As to the false arrest claim, "Probable cause to make an arrest exists *328 if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Arnold v. Wilder , 657 F.3d 353, 363 (6th Cir. 2011). It also exists "when the police have 'reasonably trustworthy information ... sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.' " Gardenhire v. Schubert , 205 F.3d 303, 315 (6th Cir. 2000) (quoting Beck v. Ohio , 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ). "In obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." Gardenhire v. Schubert , 205 F.3d 303, 318 (6th Cir. 2000).
"But a lack of probable cause is not necessarily fatal to an officer's defense against civil liability for false arrest. Rather, an officer is entitled to qualified immunity under § 1983 'if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.' " Green v. Throckmorton , 681 F.3d 853, 865 (6th Cir. 2012) (quotation omitted); see also Kennedy v. City of Villa Hills, Ky. , 635 F.3d 210, 214 (6th Cir. 2011).
Under Michigan law, a person is trespassing if they remain on someone else's property after being notified to leave by the owner or agent of the owner. Mich. Comp. Law § 750.552. Even construing the record in the light most favorable to Plaintiff, it establishes that Officer Zamojski responded to a complaint "that an employee who had just been terminated from Cambridge East Healthcare Center would not leave the premises." (R. 50-3, PID 294.) And that, once he arrived, VanTiem told him that Arucan had been terminated "but would not leave the facility." (Id. ) He observed that Arucan remained on the premises. Officer Heinrich similarly averred that he was called for assistance "by a Cambridge staff member who needed help with a former employee who refused to leave the facility." (R. 50-4, PID 299.) And that, when he arrived, VanTiem told him that Arucan had been terminated that morning and that "[VanTiem] had attempted to get [Arucan] to leave the premises after she was fired, but that [Arucan] refused." (Id. ) He also observed that Arucan remained on the premises. Thus, even though Arucan claims she personally was never told to leave the premises, the totality of the circumstances would not have lead an officer to doubt the reasonableness of VanTiem's report and thus, the probable cause they had to arrest Arucan. Cf. Radvansky v. City of Olmsted Falls , 395 F.3d 291, 310 (6th Cir. 2005) (finding that a reasonable officer would not have concluded there was probable cause for the arrest when the plaintiff denied the account given to the officer and "undisputed documentary evidence" corroborated his claim). For her part, Arucan points to no law that would have alerted the officers that they lacked probable cause to arrest her for trespass because they were not the ones who asked her to leave. The officers were therefore properly granted summary judgment on Arucan's unlawful arrest claim.[3]
*329 Arucan's excessive use of force claim also cannot survive summary judgment. She is claiming that the fact that she was handcuffed was an act of excessive force. (R. 5, PID 43; R. 77, PID 991.) The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure. Morrison v. Bd. of Trustees of Green Twp. , 583 F.3d 394, 401 (6th Cir. 2009) (citation omitted). "In order for a handcuffing claim to survive summary judgment, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." Id. (citation omitted). Officer Heinrich, the arresting officer, testified that he took precautions to ensure that Arucan would not sustain injury during the handcuffing process. (R. 50-4, PID 300.) He also testified that Arucan never complained of any pain nor did she ever request any medical attention. (Id. ) And Arucan does not point to anything in the record to suggest she complained about the handcuffs being too tight. Indeed, in her objections, she indicates she did not tell the officers she was in any pain. (R. 77, PID 991.)
Nor does the record contain any genuine issue of material fact on actual injury. Arucan testified only that the handcuffing resulted in "sternal pain on my chest wall." (R. 71-3, PID 766, 770.) At the summary judgment stage, "a subjective assessment of pain does not amount to evidence of 'physical injury.' " See Jackson v. Lubelan , 657 F. App'x 497, 501 (6th Cir. 2016) (citing Getz v. Swoap , 833 F.3d 646, 653-54 (6th Cir. 2016) ("[N]ot all conduct that causes an arrestee discomfort or pain violates the Fourth Amendment.") ). Arucan's excessive use of force claim therefore fails as a matter of law.
Arucan's twelfth and thirteenth (and corresponding parts of her first and fourth) objections are therefore overruled.
IV.
In sum, Arucan's objections to the Report do not change the fact that the Defendants have met their summary judgment burden. Nor do the objections identify any genuine issues of material fact for trial. See Anderson , 477 U.S. at 249, 106 S.Ct. 2505. So they are overruled and, for the reasons stated above, the Magistrate Judge's Report and Recommendation is ACCEPTED and Heinrich and Zamojski's motion for summary judgment (R. 50) and Cambridge East's motion for summary judgment (R. 52) are GRANTED.
SO ORDERED.
REPORT AND RECOMMENDATION MOTIONS FOR SUMMARY JUDGMENT (Dkt. 50, 52)
Stephanie Dawkins Davis, United States Magistrate Judge
I. PROCEDURAL HISTORY
Plaintiff filed her complaint against defendants on July 22, 2016. (Dkt. 1). She *330 filed an amended complaint a few days later. (Dkt. 5). Defendants in this matter are Cambridge East Healthcare/Sava SeniorCare, LLC, plaintiff's former employer, Paige VanTiem, Megan Reusser, who are employees of Cambridge (collectively, the Cambridge defendants) along with John Heinrich and Rick Zamojski, who are police officers employed by the City of Madison Heights (collectively, the Madison Heights defendants). This matter was referred to the undersigned for all pretrial proceedings. (Dkt. 10). Defendants have filed answers to the amended complaint. (Dkt. 12, 14). Discovery closed on March 13, 2017 (Dkt. 35) and defendants timely filed their motions for summary judgment on April 13, 2017. (Dkt. 50, 52). These motions are fully briefed and ready for report and recommendation. (Dkt. 59, 61, 65).
For the reasons set forth below, the undersigned RECOMMENDS that defendants' motions for summary judgment be GRANTED , that plaintiff's federal claims be DISMISSED with prejudice, and that her state claims be DISMISSED without prejudice.
II. FACTUAL BACKGROUND
A. Plaintiff's Amended Complaint
In her amended complaint, plaintiff alleges that the Cambridge defendants discriminated against her in violation of Title VII, the Age Discrimination in Employment Law, and other "federal law" (unspecified). (Dkt. 5, p. 4). The alleged discriminatory conduct included termination of her employment, failure to promote her, retaliation, and harassment. (Dkt. 5, p. 5). The alleged discriminatory acts occurred on January 8, 2016. (Dkt. 5, p. 5). Plaintiff claims she was discriminated against based on her race (Asian), color (Fair), gender (Female), national origin (Filipino), and age (date of birth: January 29, 1976). (Dkt. 5, p. 5). Plaintiff maintains that, on January 8, 2016, she was working as scheduled and did not trespass. (Dkt. 5, p. 6). She points out that even an at-will employee cannot be fired for a reason that is illegal, which, here, involved police brutality. (Dkt. 5, p. 6). She says she was not afforded the same progressive disciplinary process as her co-workers had been. (Dkt. 5, p. 6). Plaintiff claims she was the only female physical therapist assistant and was replaced by a man named Aaron Ivan Tanap. (Dkt. 5, p. 6). Plaintiff also alleges that she was harassed by Megan Reusser and Paige VanTiem. (Dkt. 5, p. 6). According to the amended complaint, Ms. VanTiem favors men and does not discipline or punish male employees when they made mistakes. (Dkt. 5, pp. 6-7).
As to the Madison Heights defendants, plaintiff alleges they "did a warrantless entry" and did not get the facts right. Plaintiff alleges that she was unlawfully detained by the Madison Heights defendants for 24 hours and put into a cold cell. She was "unduly handcuffed," that is, handcuffed unnecessarily behind her back, which caused pain and enlarged her chest area. Plaintiff says she became sick with a cough after this incident. Plaintiff also alleges that the officers did not read Miranda rights to her, she never resisted, and she followed all commands, as evidenced on the CCTV footage of the facility and police station. (Dkt. 5, p. 7).
B. Factual Development
Plaintiff is a 40-year old woman from the Philippines who immigrated to the United States in 2004. (Dkt. 52, Ex. 1, Plaintiff's Deposition, p. 21). On September 24, 2012), plaintiff was hired by Cambridge East Healthcare Center, a private nursing home owned by SavaSeniorCare (Cambridge East), as a physical therapy assistant. (Dkt. 52, Ex. 1, p. 26; Ex. 2, *331 10/9/2012 Signed Position Description). Plaintiff was an at-will employee. (Dkt. 52, Ex. 1, p. 9). On January 5, 2016, according to the Cambridge defendants, plaintiff provided unnecessary and unapproved physical therapy treatment on a Cambridge East patient. (Dkt. 52, Ex. 3, Incident/Accident Report; Ex. 4, Interdisciplinary Progress Notes, pp. 1-2). On that date, there were some changes to plaintiff's schedule (a patient needed to be removed) so a physical therapist, Bobby Manalel, asked plaintiff to see a patient by the name of Catherine "Y". (Dkt. 52, Ex. 5, Affidavit of Megan Mocny, ¶ 5; Ex. 1, pp. 50-51). However, instead of treating Catherine "Y," plaintiff treated Catherine "B" - an individual who was not approved for the performed physical therapy services. (Dkt. 52, Ex. 5, ¶¶ 14-16). Megan Mocny, plaintiff's direct supervisor and Cambridge East's rehabilitation manager, became suspicious about the potential mix-up when she was reviewing patient discharge dates with plaintiff the following day. (Dkt. 52, Ex. 5, ¶¶ 11-12) (Ex. 4, p. 1). In particular, plaintiff mentioned that Catherine "Y" 's daughter did not want her to receive therapy. (Dkt. 52, Ex. 5, ¶ 11; Ex. 4, p. 1). Ms. Mocny asked plaintiff to take her to the room of the patient who she had treated the day before. As Ms. Mocny suspected, plaintiff took her to Catherine "B" 's room. (Dkt. 52, Ex. 5, ¶¶ 13-14; Ex. 4, p. 1). Ms. Mocny asked plaintiff if she did, in fact, treat Catherine "B" the previous day and she indicated that she had. (Dkt. 52, Ex. 5, ¶ 15; Ex. 4, pp. 1-2). Plaintiff also subsequently acknowledged that she did not treat Catherine "Y." (Dkt. 52, Ex. 5, ¶ 16; Ex. 4, p. 2).
Ms. Mocny immediately reported the incident to Paige VanTiem, Administrator of Cambridge East and Sarah Hoskins, a Speech Therapist. (Dkt. 52, Ex. 5, ¶ 17). Later that day, plaintiff advised Ms. Mocny that she was unaware of the correct patient's name as she had been passed the patient by one of the physical therapists that morning. (Dkt. 52, Ex. 5, ¶ 18; Ex. 4, p. 2). Ms. Mocny explained to plaintiff that it was her responsibility to know the patients she was treating and that if she was unsure she should have looked at the evaluation/assignment board and could have also confirmed the correct patient was being treated by looking at the name and room number on the door. (Dkt. 52, Ex. 5, ¶ 19; Ex. 4, p. 2). Ms. Mocny explained that plaintiff's "mistake" simply could not happen, as certain types of therapy could be harmful to certain patients. (Dkt. 52, Ex. 5, ¶ 20; Ex. 4, p. 3).
The following day, January 7, 2016, plaintiff completed a handwritten statement, which explained that she "mistakenly treated" Catherine "B" and listed the treatment that was improperly conducted. (Dkt. 52, Ex. 6, Plaintiff's 1/7/2016 Statement). During her deposition, plaintiff initially indicated that she did not remember writing that statement. (Dkt. 52, Ex. 1, p. 63). Subsequently, plaintiff changed her story and indicated that Ms. Mocny "forced" her to write the statement. (Dkt. 52, Ex. 1, pp. 94, 98-101). However, plaintiff admitted that she did, in fact, give the wrong treatment to the wrong patient - Catherine B. (Dkt. 52, Ex. 1, pp. 110-111). Plaintiff further explained that it would have been wrong to bill for treatment that was improperly provided and that is why she allegedly "reported it immediately when I learned that it's the wrong patient. I voluntarily - you know, I don't hide it to myself. I go to Megan... [and admit it] ... I'm being honest and told Megan, oh, my God... Catherine is the wrong one. I told Megan." (Dkt. 52, Ex. 1, pp. 111-112). Moreover, plaintiff admitted that she was aware during her employment at Cambridge East that she was supposed to provide physical therapy only to patients that *332 were assigned to her and only to patients that had been prescribed physical therapy treatment. (Dkt. 52, Ex. 1, pp. 38-39). Plaintiff also admitted that she was aware that providing physical therapy services to a patient who was not assigned to her and who was not supposed to be receiving physical therapy services, would be grounds for termination. (Dkt. 52, Ex. 1, p. 39).
As a result of plaintiff providing the wrong patient with physical therapy treatment, Cambridge East's Administrator, Paige VanTiem, made the decision to terminate plaintiff's employment. (Dkt. 52, Ex. 7, VanTiem Affidavit, ¶ 2). Ms. VanTiem explained that the mistake that plaintiff made was unacceptable, as there are multiple ways for a physical therapy assistant to verify that he or she is treating the correct patient and providing the incorrect treatment or unnecessary treatment to a patient could have very harmful effects on the patient. (Dkt. 52, Ex. 7, ¶ 5). On January 8, 2016, Ms. VanTiem asked Ms. Mocny to be a witness during the termination meeting and called plaintiff into her office to advise her that her employment was being terminated. (Dkt. 52, Ex. 7, ¶ 6; Ex. 5, ¶ 23). Plaintiff testified that she recalled the meeting, but could not recall anything about what happened therein. (Dkt. 52, Ex. 1, p. 67). Ms. VanTiem and Ms. Mocny testified that plaintiff was advised that her employment was being terminated because she provided physical therapy services to the wrong patient - in response, plaintiff said she was "not terminated" and refused to leave the premises. (Dkt. 52, Ex. 7, ¶¶ 7-8; Ex. 5, ¶¶ 24-25). Plaintiff left Ms. VanTiem's office and went to the second floor, where she indicated she was going to continue to treat patients; Ms. VanTiem indicated that if plaintiff refused to leave, she would call the police. (Dkt. 52, Ex. 7, ¶¶ 10-12; Ex. 5, ¶ 26). While Ms. Mocny followed plaintiff to the second floor, Ms. VanTiem called the police. (Dkt. 52, Ex. 7, ¶¶ 11-12). After speaking to the police, Ms. VanTiem went to the second floor and was eventually able to convince plaintiff to return to the first floor and to Ms. VanTiem's office, but plaintiff still refused to leave the premises. (Ex. 7, ¶¶ 13-14; Ex. 5, ¶¶ 28-29).
Officers Richard Zamojski and John Heinrich of the Madison Heights Police Department were dispatched to Cambridge East in response to the call for assistance by plaintiff's employer. (Dkt. 50, Exs. A-C). When they arrived, they were informed by Paige VanTiem, an administrator at Cambridge East, that although plaintiff had been fired earlier that morning, she refused to leave the work premises. (Dkt. 50, Exs. A-C). Ms. VanTiem then pointed to plaintiff, who was seated in a chair in the administrative office. (Dkt. 50, Exs. A-B). When Officer Zamojski approached plaintiff and asked her about what had occurred, she told him to "stop harassing [her]." (Dkt. 50, Exs. A-B). Ms. VanTiem told the officer that she wanted plaintiff to leave the premises immediately. (Dkt. 50, Exs. A-B). Officer Zamojski informed plaintiff that she needed to leave Cambridge East but she refused, and would not get out of the seat she was occupying. (Dkt. 50, Exs. A-C). She again told Officer Zamojski to stop harassing her and informed him that she was calling her lawyer. (Dkt. 50, Exs. A-B). Ms. VanTiem then asked plaintiff to leave, in Officer Zamojski's presence, advising plaintiff that she was terminated, to which plaintiff responded, "I am not leaving." (Dkt. 50, Ex. A-B). Officer Zamojski again told plaintiff to exit the premises, this time warning her that she would be arrested for trespassing if she failed to do so. (Dkt. 50, Exs. A-C).
When plaintiff still would not get out of her seat, Officer Zamojski advised her three more times to leave, but instead of *333 complying, plaintiff responded, "I need to work" and told the officers that she needed to treat her patients. (Dkt. 50, Exs. A-C). Officer Zamojski, for at least the sixth time, told plaintiff to leave Cambridge East, finally prompting her to get out of her chair. (Dkt. 50, Exs. A-B). At that point, Officers Zamojski and Heinrich escorted plaintiff out of the administrative office, to a first floor hallway, where she again threatened to call her lawyer. (Dkt. 50, Exs. A-B). Officer Zamojski told plaintiff to leave the facility and call her lawyer outside. (Dkt. 50, Exs. A-B). Officer Zamojski told plaintiff to exit Cambridge East two more times but plaintiff continued to refuse to leave. (Dkt. 50, Exs. A-C). Officer Heinrich stated that he was asking her to exit for the final time, or she would be arrested. (Dkt. 50, Exs. A-C). This was at least the tenth time plaintiff was asked to leave the premises between the two officers. (Dkt. 50, Exs. A-C).
When plaintiff again refused to leave, Officer Heinrich got out his handcuffs and attempted to place plaintiff under arrest. (Dkt. 50, Exs. A-C). During the handcuffing process, plaintiff pulled away several times. (Dkt. 50, Exs. A-C). Finally, Officer Heinrich was able to place the handcuffs on plaintiff, checking them for tightness and double locking them to ensure they did not become tighter on her wrists. (Dkt. 50, Exs. A-B). The only physical injury plaintiff complains of in this lawsuit is discomfort in her sternum area, which she attributes, without support, to the fact that she was placed in handcuffs. (Dkt. 50, Ex. E, pp. 113-114). Plaintiff concedes that Officer Zamojski did not touch her at any point during the encounter that morning. (Dkt. 50, Ex. E, pp. 118, 123). Officer Zamojski did not have any further contact with plaintiff after she was handcuffed. (Dkt. 50, Ex. B). Additionally, plaintiff acknowledges that the only time Officer Heinrich touched her was to place her hands behind her back in order to handcuff her. (Dkt. 50, Ex. E, pp. 121-122).
Officer Heinrich placed plaintiff in his patrol car and transported her, without incident, to the Madison Heights Police Department, which was only a mile and a half away from Cambridge East. (Dkt. 50, Ex. A; Ex. C; Ex. G, In-Car Video). In the back of the patrol car, plaintiff did not complain of, and did not appear to be experiencing, any pain. (Dkt. 50, Ex. G; Ex. C). Inside the booking room, Officer Heinrich removed plaintiff's handcuffs and booked her with no problem. (Dkt. 50, Ex. C; Ex. E, pp. 122). Plaintiff did not request medical attention and did not appear to be in any kind of medical distress inside the booking room. (Dkt. 50, Ex. C; Ex. H - Booking Sheet). After the booking process was complete, plaintiff was placed into a holding cell and Officer Heinrich had no further contact with her. (Dkt. 50, Ex. A; Ex. C).
Although her pleadings allege that she was held at the Madison Heights lockup for 74[1] hours, plaintiff's own testimony indicates that she was released on January 8, 2016 in time to have lunch at a Vietnamese restaurant with a friend. (Dkt. 50, Ex. E, pp. 74-75, 77, 83-84; Dkt. 5). This fact is supported by the Madison Heights Police Department's Detention Sheet, which indicates that plaintiff was lodged at the PD from approximately 9:13 a.m. to 11:25 a.m. (Dkt. 50, Ex. H - Detention Sheet). Plaintiff was charged with trespassing, a misdemeanor offense, and was represented by attorney Doraid Elder throughout the criminal proceedings. (Dkt. 50, Ex. I -Criminal *334 Complaint & Appearance). On April 12, 2016, plaintiff entered into a plea bargain, pursuant to which she was permitted to plead no contest to the trespassing charge under a first offender program. (Dkt. 50, Ex. E, pp. 113, Ex. J - Plea Agreement). One of the terms of the plea agreement was that plaintiff agreed to "release the City, its officers, employees and agents from any claims, damages, or causes of action of any kind that may be associated with the incident resulting in the prosecution of this case." (Dkt. 50, Ex. J). Both plaintiff and her attorney signed this release of liability. Id.
III. ANALYSIS AND CONCLUSION
A. Standard of Review
When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." State Farm Fire & Cas. Co. v. McGowan , 421 F.3d 433, 436 (6th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett , 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.' " Brown v. Scott , 329 F.Supp.2d 905, 910 (E.D. Mich. 2004).
In order to fulfill this burden, the non-moving party need only demonstrate the minimal standard that a jury could ostensibly find in his favor. Anderson , 477 U.S. at 248, 106 S.Ct. 2505 ; McLean v. 988011 Ontario, Ltd. , 224 F.3d 797, 800 (6th Cir. 2000). However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson , 477 U.S. at 248, 251, 106 S.Ct. 2505.
The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." Anderson , 477 U.S. at 248, 106 S.Ct. 2505. Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. Id. at 254, 106 S.Ct. 2505. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment *335 the Court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. See id. at 252-53, 106 S.Ct. 2505. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. Celotex , 477 U.S. at 323, 106 S.Ct. 2548. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." Id. at 327, 106 S.Ct. 2548.
B. Sufficiency of Plaintiff's Responses
The present circumstances are similar to those facing the court in Faryen v. United Machining Inc. , 2016 WL 5106975, *4 (E.D. Mich. Aug. 16, 2016), report and recommendation adopted, 2016 WL 4988255 (E.D. Mich. Sept. 19, 2016) (quoting Barnes v. SRI Surgical Exp., Inc. , 2012 WL 1059935, *3 (E.D. Tenn. 2012) ), where "the poor quality of Plaintiff's briefing has considerably complicated the Court's task." In Faryen the court observed that while the plaintiff did not fail to respond altogether, the response was "so deficient that an evaluation of the Court's responsibilities when presented with an unopposed dispositive motion" was appropriate. Id. at *4 (quoting Barnes , at *3 ). A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded; at a minimum, the court is required to examine the motion to ensure that the movant has met his initial burden. Id. (citing Stough v. Mayville Cmty. Sch. , 138 F.3d 612, 614 (6th Cir. 1998) ). Nevertheless, in the absence of a response, the court will not "sua sponte comb the record from the partisan perspective of an advocate for the non-moving party." Id. (quoting Guarino v. Brookfield Twp. Trs. , 980 F.2d 399, 410 (6th Cir. 1992) ). "Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.' " Id. at *4 (quoting Barnes , at *3 ). If such evidence supports a conclusion that there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith." Id. (alteration omitted); see also Norris v. Aryers , 2016 WL 706238, *2 (E.D. Tenn. 2016) ; Hicks v. Concorde Career Coll. , 449 Fed. Appx. 484, 487 (6th Cir. 2011) (finding that "[t]he district court properly declined to consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in ... his response to the summary judgment motion"); Snyder v. Chrysler Group, LLC , 2016 WL 3213388 (E.D. Mich. 2016) ("If an opposing party fails to properly address the factual assertions of the moving party, the court may 'consider the facts undisputed for the purposes of the motion' and 'grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it.' ") (quoting Fed.R.Civ.P. 56(e) ).
Because plaintiff is a pro se litigant, her filings are liberally construed. Spotts v. United States , 429 F.3d 248, 250 (6th Cir. 2005) (citing Haines v. Kerner , 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers) );
*336 Boswell v. Mayer , 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the duty on a summary judgment motion to support the party's factual assertions with admissible evidence. Maston v. Montgomery Cnty. Jail Med. Staff Pers. , 832 F.Supp.2d 846, 851-52 (S.D. Ohio 2011) (citing Viergutz v. Lucent Techs., Inc. , 375 Fed. Appx. 482, 485 (6th Cir. 2010) ). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. Id. (citing Viergutz , 375 Fed. Appx. at 485 ). Given the nature of plaintiff's response to the motions for summary judgment, undersigned will endeavor to determine if defendants have met their initial burden as required in Faryen and Barnes , supra.
C. Defendants Have Met Their Initial Summary Judgment Burden
1. Cambridge East Healthcare Defendants
(a). Title VII Claims
To prove her race or national origin discrimination claim under Title VII, plaintiff must prove that (1) she was a member of a protected class, (2) she suffered an adverse employment action, (3) she was otherwise qualified for the position, and (4) she was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee. Deleon v. Kalamazoo Cnty. Road Comm'n , 739 F.3d 914, 918 (6th Cir. 2014). In order to prevail in a Title VII employment discrimination claim, a plaintiff must provide either direct evidence of intentional discrimination by the defendant or circumstantial evidence that would allow an inference of discriminatory treatment. Talley v. Bravo Pitino Rest. , 61 F.3d 1241, 1246 (6th Cir. 1995). If a plaintiff successfully establishes these four elements, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendant successfully supplies such a legitimate reason, the burden then falls on the plaintiff to demonstrate that this proffered reason is mere pretext. Id. at 804, 93 S.Ct. 1817. As discussed below, plaintiff's claim fails because she cannot show that she was treated differently than a similarly situated, non-protected employee.
In their motion for summary judgment, the Cambridge defendants point out that although plaintiff "checked the box" for failure-to-promote in her complaint, she never applied for any promotion, was never denied any promotion, and was not qualified for any promotion. Rather, according to her complaint, all of her claims derive from what occurred on January 8, 2016 - her termination. (Dkt. 5, p. 5). Plaintiff also asserts in her complaint that the only other physical therapist assistants were men and that Ms. VanTiem favored men and did not discipline male employees. (Dkt. 5, pp. 6-7). Defendants assert that plaintiff makes no specific allegations regarding her race or national origin or how she was allegedly treated differently than individuals outside of those protected characteristics. (Dkt. 5). Thus, defendants maintain that plaintiff's baseless allegations are insufficient to create a genuine issue of material fact regarding the Cambridge defendants' treatment of her compared to other employees.
The Cambridge defendants also assert that plaintiff has no evidence to dispute their legitimate, nondiscriminatory reasoning for her termination or to establish that it was pretext for impermissible discrimination. Specifically, plaintiff has not and *337 cannot identify any similarly-situated employee who, like her, administered treatment to the wrong patient and was not subsequently disciplined. Ms. VanTiem and Ms. Mocny have testified that they are both unaware of any other employee who provided physical therapy treatment to the wrong patient. (Dkt. 52, Ex. 5, ¶ 31; Ex. 7, ¶ 20). Thus, the Cambridge defendants maintain that it is impossible for plaintiff to establish that a male employee with whom she compares her treatment was similarly-situated in all respects, as required and explained by Mitchell . See Mitchell v. Toledo Hosp. , 964 F.2d 577, 583 (6th Cir.1992).
Additionally, the Cambridge defendants contend that they have met their burden under the applicable McDonnell Douglas framework. They have repeatedly and consistently articulated the legitimate, nondiscriminatory reason for plaintiff's termination: her admitted conduct in providing physical therapy treatment to the wrong patient. (Dkt. 52, Ex. 1, pp. 111-112; Ex. 7, ¶¶ 2-3, 22). Plaintiff acknowledged and admitted that she was an at-will employee during her employment. (Dkt. 52, Ex. 1, p. 9). The company's employment handbook explained that certain types of violations would result in immediate termination. (Dkt. 52, Ex. 10, Excerpt from Handbook, Section IV: Employment Practices). Here, Ms. VanTiem determined plaintiff's conduct warranted immediate termination. (Dkt. 52, Ex. 7, ¶¶ 2-3, 22).
Finally, defendants argue that plaintiff has no evidence to establish pretext. She admitted the reasoning for terminating her employment was based in fact. (Dkt. 52, Ex. 1, pp. 111-112). There is no dispute that plaintiff, on January 5, 2016, administered physical therapy treatment to the wrong patient. (Dkt. 52, Ex. 1, pp. 111-112; Ex. 4, pp. 2-3; Ex. 5, ¶¶ 14-18; Ex. 6). According to the Cambridge defendants, plaintiff has no evidence that her very critical error in administering physical therapy treatment to the wrong patient was not the actual reason for Ms. VanTiem's decision to terminate her employment. Similarly, defendants assert that plaintiff has no evidence that her error was "insufficient" to justify the decision. Rather, to the contrary, defendants maintain that the error was extremely unusual (Ms. VanTiem and Ms. Mocny are unaware of any other employee who ever gave physical therapy treatment to the wrong patient) and could have had significant consequences for the company and the patient. (Dkt. 52, Ex. 5, ¶ 31; Ex. 7, ¶¶ 5, 20). Therefore, defendants contend that plaintiff cannot possibly establish pretext. See White , 533 F.3d at 393. Because plaintiff cannot establish a prima facie case of discrimination, the Cambridge defendants have articulated a legitimate, nondiscriminatory reason for terminating plaintiff's employment, and plaintiff cannot rebut that reason by demonstrating it was mere pretext for impermissible discrimination, plaintiff's Title VII discrimination claims fail as a matter of law.
In response, plaintiff merely asserts that at the time of the incident in question, she was scheduled to work a full 8 hour shift and, per the employee handbook, employees may not stop working before the time specified for their shift to end. (Dkt. 50, p. 1; Ex. 2, Pg ID 629). Plaintiff also says that she was not afforded a progressive disciplinary process and that defendants' intention was to replace her with a new physical therapy assistant named Aaron Ivan Tanap, a younger, male, less expensive employee.
While plaintiff maintains that defendants' reason for firing her was without merit, defendants are correct: she offers no evidence whatsoever to support her claim that she was terminated because of *338 her sex, national origin, or race or that the reason for her termination was merely a pretext. Thus, plaintiff has not met her burden of establishing a genuine issue of material fact regarding her claim that she was terminated because her race, national origin, or that the stated reason for her termination was merely a pretext. Consequently, her claim must fail. The undersigned also concludes that the Cambridge defendants have met their initial burden and summary judgment for them is appropriate on this claim.
(b). ADEA Claim
Next, while plaintiff alleges that her claims are brought, in part, pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA") (Dkt. 5, p. 4), the Cambridge defendants point out that the prohibitions in the ADEA only apply to individuals who are at least 40 years of age. 29 U.S.C. § 631(a). And, at the time she was terminated, plaintiff was not yet 40 years old. (Dkt. 52, Ex. 1, pp. 22-23). Thus, defendants maintain that plaintiff simply cannot sustain an age discrimination claim under the ADEA and it should be dismissed. Again, in response, plaintiff merely says that she was replaced by a younger man.
In order to establish a prima facie case under the ADEA, a plaintiff must show that: 1) she is over 40 years old and, thus, is within the class protected by the ADEA; 2) she suffered an adverse employment action; 3) she was qualified for the employment position at issue; and 4) she was either replaced by a person who was significantly younger or was treated differently than similarly-situated individuals who were significantly younger. Grimes v. SW. Airlines Co. , 2018 WL 646406, at *6 (M.D. Tenn. Jan. 31, 2018) (citing Grosjean v. First Energy Corp. , 349 F.3d 332, 335 (6th Cir. 2003) ). As plaintiff testified, she was born on January 29, 1976. (Dkt. 52, Ex. 1, pp. 22). She was only 39 years old on the date she was terminated by defendants. Id. at 23. Thus, plaintiff cannot make out a prima facie case of discrimination under the ADEA because she was under 40 years old on the date she was termination. Defendants are entitled to dismissal of this claim.
(c). Harassment/Hostile Work Environment Claim
Lastly, the Cambridge defendants asserts that plaintiff's "harassment" claim must fail. In her complaint, plaintiff makes the general accusation that she was "harassed" by Ms. Reusser and Ms. VanTiem. (Dkt. 5, p. 6). Defendants acknowledge that Title VII offers employees protection from a "workplace [ ] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc. , 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal citations and quotation marks omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." Id. at 21-22, 114 S.Ct. 367 ; see also Jackson v. Quanex Corp. , 191 F.3d 647, 658 (6th Cir. 1999). Likewise, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." Id. According to defendants, plaintiff has not alleged any factors that would demonstrate that her workplace was "permeated" with "discriminatory intimidation, ridicule, and insult" much less that the conduct was "sufficiently severe *339 or pervasive to alter the conditions of [her] employment and create an abusive working environment." See Harris , 510 U.S. at 21, 114 S.Ct. 367. At best, defendants assert that plaintiff has alleged generally that she was "harassed" on January 8, 2016, the date she was terminated. (Dkt. 5, pp. 5-6). Defendants maintain that, on that date, the undisputed evidence establishes that plaintiff was not subjected to an alleged "hostile work environment" -- rather, she was terminated for a legitimate, nondiscriminatory reason and subsequently refused to leave the premises, which ultimately resulted in her arrest. (Dkt. 52, Ex. 7, ¶¶ 3-5, 10-18, 22; Ex. 8, pp. 4-5). Defendants assert that plaintiff was never "harassed" nor subjected to a hostile work environment and to the extent she has claimed otherwise, those claims should be dismissed.
In response, plaintiff merely recounts her version of the events on January 8, 2016. She does not explain or support her claim that she was subject to a hostile work environment. Indeed, she offers no evidence at all to support her claim that she was subjected to a hostile work environment, and there is no record evidence to support such a claim. Thus, plaintiff has not met her burden of establishing a genuine issue of material fact regarding her hostile work environment claim. The undersigned also concludes that the Cambridge defendants have met their initial burden and summary judgment for them is appropriate on this claim.
2. Defendants Heinrich and Zamojski
The Madison Heights defendants raise a number of issues on summary judgment, including their entitlement to qualified immunity.[2] The doctrine of qualified immunity means that " '[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Caldwell v. Moore , 968 F.2d 595, 599 (6th Cir. 1992) (quoting Harlow v. Fitzgerald , 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ). Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his or her position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct. Sheets v. Mullins , 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").
The Supreme Court has established a two-part test in order to determine whether qualified immunity is applicable to a particular situation. Saucier v. Katz , 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." Id. If the first question is resolved in the affirmative, then the court should decide "whether the right was clearly established." Id. If both questions are resolved in the affirmative, then the doctrine of qualified immunity does not apply and the case can proceed. The Court has since abandoned the mandatory sequencing and determined that the two factors can be addressed in whichever order the trial court deems appropriate based on several *340 factors, not the least of which is judicial economy. Pearson v. Callahan , 555 U.S. 223, 227, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). As the Sixth Circuit has observed, "This generally means that 'we are free to consider those questions in whatever order is appropriate in light of the issues before us.' " Jones v. Byrnes , 585 F.3d 971, 975 (6th Cir. 2009) (quoting Moldowan v. City of Warren , 570 F.3d 698, 720 (6th Cir. 2009) ).
In the instant case, the Court will address the first question and, as discussed below, plaintiff's claims fail to meet the first part of the test: That is, viewing the facts in the light most favorable to plaintiff, she has not shown that defendants' conduct violated any constitutional right. Therefore, the inquiry need proceed no further and defendants are entitled to qualified immunity.
(a). Illegal Seizure/False Arrest/Imprisonment
Section 1983 claims based on theories of false arrest/false imprisonment[3] or illegal seizure derive from the Fourth Amendment and turn on the question of probable cause. Frantz v. Village of Bradford , 245 F.3d 869, 873 (6th Cir. 2001) ; Stemler v. City of Florence , 126 F.3d 856, 871-72 (6th Cir. 1997) (finding the existence of probable cause for arrest forecloses false arrest claims); Baker v. McCollan , 443 U.S. 137, 142-43, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("[b]y virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty."); Ingram v. Columbus , 185 F.3d 579, 592-93 (6th Cir. 1999) (internal citations omitted) (To constitute an unreasonable seizure in violation of the Fourth Amendment, an arrest must be made without probable cause).
Whether there was a constitutional violation giving rise to plaintiff's claims of false arrest/illegal seizure and false imprisonment depends on whether defendant officers had probable cause to arrest plaintiff. As the Sixth Circuit stated, "A [police officer] is entitled to qualified immunity" on a false arrest and false imprisonment claim "if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the [police officer]." Kennedy v. City of Villa Hills , 635 F.3d 210, 214 (6th Cir. 2011). The law in this circuit establishes that "[a]n eyewitness identification - standing alone - is sufficient to establish probable cause unless the officer has some reason to believe at the time of the arrest that the eyewitness is lying or mistaken." Thomas v. Noder-Love , 621 Fed. Appx. 825, 832 (6th Cir. 2015) (citing Ahlers v. Schebil , 188 F.3d 365, 370 (6th Cir. 1999) ; see also Thacker v. City of Columbus , 328 F.3d 244, 257 (6th Cir. 2003) (a victim's accusations alone without a statement from accused *341 was sufficient for probable cause). A police officer has probable cause to arrest a suspect if the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." Michigan v. DeFillippo , 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) ; Thacker v. City of Columbus , 328 F.3d 244, 260 (6th Cir. 2003) ("Insofar as the question of probable cause here is a close one, reasonable officials could disagree as to whether probable cause existed. Thus, the defendant officers are entitled to qualified immunity on Thacker's Fourth Amendment seizure claim.") (internal citations omitted) ). Probable cause means a "fair probability." United States v. Sokolow , 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Once probable cause is established, an officer "is under no obligation to continue investigating and may instead pursue the arrest of a suspect." Crockett v. Cumberland College , 316 F.3d 571, 584 (6th Cir. 2003) (citation omitted). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." Pyles v. Raisor , 60 F.3d 1211, 1215 (6th Cir. 1995) (citing Yancey v. Carroll County , 876 F.2d 1238, 1243 (6th Cir. 1989) ). Finally, "An eye witness's statement that he or she saw a crime committed or was the victim of a crime is generally sufficient to establish probable cause" and nothing casts doubt on the victim's reliability. United States v. Shaw , 464 F.3d 615, 623 (6th Cir. 2006) (citing United States v. Harness , 453 F.3d 752 (6th Cir. 2006) ).
According to the Madison Heights defendants, they were dispatched to Cambridge East after plaintiff's employer called the police to complain that she had been terminated and was refusing to leave the premises. When the officers arrived, they spoke to supervisor Ms. VanTiem, who confirmed that plaintiff had been terminated earlier that morning and would not exit Cambridge East despite repeated instruction to do so. (Dkt. 50, Exs. A-C). Defendants also point out that they witnessed firsthand Ms. VanTiem's demand to plaintiff that she leave the property and plaintiff's refusal to comply. (Dkt. 50, Exs. A-B; Ex. E, pp. 85, 129). Thus, the officers assert that they clearly had probable cause to arrest plaintiff for trespassing that day, and any illegal search and seizure claim that plaintiff may be alleging fails as a matter of law.
Additionally, defendants argue that plaintiff's no contest plea in this case bars her from challenging the probable cause that gave rise to her arrest in the context of this civil litigation. (Dkt. 50, Ex. J). Defendants cite Walker v. Schaeffer , 854 F.2d 138, 142-43 (6th Cir. 1988) for the proposition that a plaintiff's no contest plea during state court criminal proceedings estopped her from later claiming that the arresting officers acted without probable cause in a civil lawsuit. See also Daubenmire v. City of Columbus , 507 F.3d 383, 390 (6th Cir. 2008) (Plaintiffs' pleas in state court estopped them from challenging the officers' probable cause determination in a subsequent 42 U.S.C. § 1983 lawsuit.). Given plaintiff's no contest plea to trespassing in this case, defendants urge this Court to conclude that plaintiff's illegal search and seizure claim as a matter of law.
The affidavits of the officers establish that they had probable cause to believe that plaintiff had committed criminal trespass. Under Michigan law, it is a misdemeanor for a person to "[r]emain without lawful authority on the land or premises of another after being notified to depart by *342 the owner or occupant or the agent of the owner or occupant." People v. Jamison , 2013 WL 6124274, at *3 (Mich. App. Nov. 21, 2013) (quoting Mich. Comp. Laws § 750.552(1)(b) ). Both defendants explain that they arrived on site at Cambridge East after receiving a call that an employee had been terminated and refused to leave the premises, which was confirmed by Ms. VanTiem in their presence. (Dkt. 50, Ex. B, ¶¶ 4, 7-8; Ex. C, ¶¶ 4, 6-8). They also witnessed Ms. VanTiem, in their presence, ask plaintiff to leave the premises immediately, and saw her refuse. (Dkt. 50, Ex. B, ¶ 9). Plaintiff also refused the officers' repeated requests to leave and failed to heed their warning that she would be arrested if she refused to do so. (Dkt. 50, Ex. B, ¶¶ 10-13; Ex. C, ¶¶ 9-14). Plaintiff does not respond to defendants' arguments regarding probable cause, and she provides no evidence to support a contrary conclusion. Moreover, plaintiff indeed did plead no contest to the misdemeanor trespass charge, which is an absolute bar to plaintiff's § 1983 suit. (Plea Agreement, Dkt. 50, Ex. J). See Darrah v. City of Oak Park , 255 F.3d 301 (6th Cir. 2001). As such, defendants have met their burden on summary judgment of establishing probable cause for plaintiff's arrest and plaintiff has not disputed these facts. Thus, defendants Zamojski and Heinrich are entitled to summary judgment.
(b). Excessive Force
The legal principles applicable to plaintiff's claim of excessive force are well-established. "[C]laims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor , 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In determining whether a constitutional violation based on excessive force has occurred, the Sixth Circuit applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." Fox v. DeSoto , 489 F.3d 227, 236 (6th Cir. 2007) (citing Graham , 490 U.S. at 395-96, 109 S.Ct. 1865 ). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Graham , 490 U.S. at 396-97, 109 S.Ct. 1865. "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.' " Fox , 489 F.3d at 236 (quoting Graham , 490 U.S. at 396, 109 S.Ct. 1865 ).
Although it is not entirely clear, plaintiff seems to suggest that she should not have been handcuffed and that the fact that she was handcuffed and experienced some physical distress from that experience is excessive force. Plaintiff states, "I was handcuffed unduly and I felt, unnecessarily, (behind my back)." (Dkt. 5). She claims that the handcuffing caused her to experience "pain and enlarged [sic] on [her]chest area." Id. Defendants asserts that plaintiff neither alleges nor offers any evidence suggesting that Officer Heinrich used any excessive force in bringing plaintiff's hands behind her back for the purpose of handcuffing her. According to their affidavit and police report, Officer Heinrich took precautions such as double locking the handcuffs and checking them for tightness in order to ensure that plaintiff would not sustain injury during the handcuffing process. (Dkt. 50, Exs. A-B). The caution used *343 by Officer Heinrich in applying the cuffs, and the fact that excessive force was not used in cuffing plaintiff, is confirmed by her failure to allege any wrist injury as a result of the cuffing. (Dkt. 50, Ex. C). After the short one and a half-mile ride to the Madison Heights PD, plaintiff's handcuffs were removed and she did not complain of pain inside the lockup, nor did she request any medical attention. (Dkt. 50, Ex. C). Notably, plaintiff testified that Officer Zamojski did not touch her at all, so there is no basis for any excessive force claim whatsoever against this officer. (Dkt. 50, Ex. E, pp. 118, 123). Defendants maintain that the only physical contact she is alleging against Officer Heinrich is limited to his justified and proper handcuffing of plaintiff.
The cases cited by defendants are apt. In particular, the Sixth Circuit has concluded that an excessive force claim cannot stand where plaintiff's allegation of excessive force stems solely from the application of handcuffs pursuant to an otherwise lawful arrest. See Shelton v. Taylor , 92 Fed. Appx. 178, 182 (6th Cir. 2004) ("without evidence of unreasonable force, the simple act of handcuffing a suspect in the course of a lawful arrest cannot form the basis of an excessive force claim); see also Palshook v. Jarrett , 120 F.Supp.2d 641, 656 (N.D. Ohio 2000) ("Insofar as [plaintiff's] claim rests entirely on the fact that he was handcuffed [to a bench in a holding cell] ... there is no cause of action for excessive force. It may be true that it was unnecessary ... but in the context of placing an individual under arrest, use of handcuffs alone cannot amount to excessive force") (footnote omitted). Plaintiff does not rebut the facts presented by defendants in her response and merely reiterates her claim that Officer Heinrich "pulled her hands behind her back unduly..." (Dkt. 59, p. 2). Under the totality of the circumstances, the conduct of the officers was objectively reasonable and therefore the conduct does not involve "excessive" force in a Constitutional sense. Kostrzewa v. City of Troy , 247 F.3d 633, 639 (6th Cir. 2001). Thus, defendants Zamojske and Heinrich have met their summary judgment burden and are entitled to judgment in their favor on plaintiff's excessive force claim.
(c). Miranda
To the extent that plaintiff alleges a violation of her Miranda rights, such a claim is entirely without merit. Failure to read Miranda warnings without use of the compelled testimony at trial is not an actionable violation under § 1983 because no Fifth Amendment right could have been violated under those circumstances. See Chavez v. Martinez , 538 U.S. 760, 772-773, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003). Miranda warnings are "a procedural safeguard rather than a right arising out of the Fifth Amendment itself." Warren v. City of Lincoln, Neb. , 864 F.2d 1436, 1442 (8th Cir. 1989). Furthermore, the remedy for such a violation is suppression of the evidence in the prosecution's case in chief. See Missouri v. Seibert , 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). Because there was no use of compelled testimony at trial against plaintiff, there is no actionable Fifth Amendment claim under § 1983 because no Fifth Amendment right could have been violated. Plaintiff's claim is simply not tenable in the context of this civil action. Therefore, defendants cannot be liable to plaintiff for any failure to read the Miranda warnings.
(d). Equal Protection
While it is not clear that plaintiff has asserted an equal protection claim in her complaint, defendants address this issue in an abundance of caution. Thus, the undersigned too will address this potential *344 claim, in the interest of completeness. Defendants correctly point out that while plaintiff's complaint mentions her status as a woman and a minority, she has not set forth a viable Equal Protection claim. As explained in DeSoto v. Board of Parks and Recreation , 64 F.Supp.3d 1070, 1090 (M.D. Tenn. 2014), the essence of an equal protection claim is disparate treatment of the plaintiff relative to others: thus, "[t]o state an equal protection claim, a plaintiff must adequately plead that the government [treats certain people] disparately as compared to similarly situated persons and that such disparate treatment either [sic] burdens a fundamental right, targets a suspect class, or has no rational basis." Id. (quoting Raymond v. O'Connor , 526 Fed. Appx. 526, 530 (6th Cir. 2013) (quoting Ctr. for Bio-Ethical Reform, Inc. v. Napolitano , 648 F.3d 365, 379 (6th Cir. 2011) ). "The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." Raymond , 526 Fed. Appx. at 530 (quoting Scarbrough v. Morgan Cnty. Bd. of Educ. , 470 F.3d 250, 260 (6th Cir. 2006) ).
In DeSoto , while the court acknowledged that the plaintiff was not obligated to plead a prima face case of discrimination in compliance with the McDonnell Douglas burden-shifting framework in the complaint, the court also held that the plaintiff could not "survive a motion to dismiss without pleading specific allegations of disparate treatment, which are essential to an equal protection claim that does involve direct allegations of discrimination." Id. at 1091 (citing Raymond , 526 Fed. Appx. at 530 ) ("The complaint's sole reference to disparate treatment is the undeveloped assertion of a different and harsher standard of scrutiny might be applied to non-residents discussed above. Without specific allegations of disparate treatment, the district court properly dismissed Raymond's equal protection claim."). Reading plaintiff's complaint generously, she makes generalized claims of poor treatment because of her sex and national origin. But such generalized allegations are insufficient to state a claim. Like the plaintiff in DeSoto , plaintiff has failed to allege that the Madison Heights defendants in fact treated any man or person of other national origin differently from how she was treated, or that a man or person of another national origin engaged in the same conduct that she did, and was treated more favorably. Id. at 1091. For these reasons, plaintiff's complaint fails to state a claim for violation of the Equal Protection Clause.
D. State Law Claims
As to any state law claims asserted by plaintiff, the undersigned suggests that those be dismissed as well. When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over any state law claims rests within the court's discretion. Blakely v. United States , 276 F.3d 853, 860 (6th Cir. 2002). Indeed, under § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over the remaining state law claims. Musson Theatrical, Inc. v. Fed. Express Corp. , 89 F.3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."). Here, there is no compelling reason to retain supplemental jurisdiction over plaintiff's state law claims and thus, the undersigned recommends that they be dismissed without prejudice. Plaintiff is free to bring her state law claims in state court.
*345 E. Miscellaneous Evidentiary/Discovery Issues
Plaintiff claims that her deposition transcript is not authenticated. The Cambridge defendants correctly point out that this is incorrect. They explain that the transcript from plaintiff's deposition confirms that it was transcribed by Sheila D. Rice, CSR-4163, RPR, RMR, Notary Public. (Dkt. 52, Ex. 1). Ms. Rice confirmed on page 131 of that transcript that plaintiff's deposition was "taken before me," that plaintiff was "duly sworn at the aforementioned time and place," that the testimony was "stenographically recorded in the presence of said witness and afterwards transcribed by computer under my personal supervision," and that the transcript is a "full, true and correct transcript of the testimony given by the witness." (Dkt. 65, Ex. A, Deposition Transcript Certification). Thus, the authenticity of the deposition transcript is simply not an issue in this case.
Plaintiff also contends that the audio and video attached to the Madison Heights defendants' motion for summary judgment are not authenticated. Rule 56(c) provides in pertinent part
(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.
Rule 56 places the initial burden on the movant to demonstrate with evidence that there is no genuine issue of material fact. "The proffered evidence need not be in admissible form , but its content must be admissible." Bailey v. Floyd Cty. Bd. of Educ. By & Through Towler , 106 F.3d 135, 145 (6th Cir. 1997) (citations omitted) (emphasis in original) (further stating that, "For instance, deposition testimony will assist a plaintiff in surviving a motion for summary judgment, even if the deposition itself is not admissible at trial, provided substituted oral testimony would be admissible and create a genuine issue of material fact."). Here, defendants have not responded to plaintiff's claims that the video and audio are inadmissible. However, the undersigned has not considered these exhibits in its above analysis and thus, their authenticity is immaterial.
Plaintiff states that a record of the "ROX REHAB Computer List of Patient PT/PTA Providers Schedules" and other "records files" that she requested should be produced to her. As the Cambridge defendants explained in response to plaintiff's motion to compel, plaintiff did not request any records or files during discovery and they complied with all applicable discovery obligations. Notably, the Court denied plaintiff's motion to compel discovery because, among other reasons, she did not timely serve her discovery requests. (Dkt. 66, p. 4). Nothing in plaintiff's response brief suggests that she is moving for relief under Federal Rule of Civil Procedure 56(d), which requires the party opposing summary judgment to show by affidavit or declaration that, "for specified reasons, it cannot present facts essential to justify its opposition." Even if plaintiff's response suggests that she needs discovery in order to fully respond to the motions for summary judgment, she has not complied with Rule 56(d). The Sixth Circuit has stated that the need to comply with Rule 56(d)"cannot be overstated." Cacevic v. City of Hazel Park , 226 F.3d 483, 488 (6th Cir. 2000). A party requesting additional discovery must demonstrate *346 "its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." See id. at 488-89. A motion under Rule 56(d) may be properly denied when the requesting party "makes only general and conclusory statements... regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of [a document] to be discovered." Ball v. Union Carbide Corp. , 385 F.3d 713, 720 (6th Cir. 2004). Plaintiff has not attempted to comply with Rule 56(d). Thus, her complaints about defects in the discovery process do not bar entry of summary judgment against her.
IV. RECOMMENDATION
For the reasons set forth above, the undersigned RECOMMENDS that defendants' motions for summary judgment be GRANTED , that her federal claims be DISMISSED with prejudice, and that her state claims be DISMISSED without prejudice.
The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn , 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ; Howard v. Sec'y of Health and Human Servs. , 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Sec'y of Health and Human Servs. , 931 F.2d 390, 401 (6th Cir. 1991) ; Smith v. Detroit Fed'n of Teachers Local 231 , 829 F.2d 1370, 1373 (6th Cir. 1987).
Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2) ; E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Even if this assertion is true, it does not negate the fact that she treated the incorrect patient and was terminated on that basis.

It is unclear if Arucan is asserting that she did not knowingly plead to the trespassing charge, or if she did not knowingly waive her right to sue the police department regarding the underlying incident. Regardless, Arucan is raising this argument for the first time in her objections.

The Court also notes that Arucan pled no contest to trespassing. (R. 50-11.) In so doing, she admitted to the essential elements of trespassing. See People v. Patmore , 264 Mich.App. 139, 693 N.W.2d 385, 390 (2004). And her conviction, "unless procured by false or fraudulent testimony or other unlawful means," is conclusive proof of probable cause. See Moore v. Michigan Nat'l Bank , 368 Mich. 71, 117 N.W.2d 105, 106 (1962). While the law is unsettled on this issue, courts have applied estoppel principles to preclude a section 1983 plaintiff (in similar circumstances) from challenging probable cause. See Walker v. Schaeffer , 854 F.2d 138 (6th Cir. 1988) (plea of no contest in state court to criminal charges precluded subsequent claim of false arrest in federal court because plaintiff had a "full and fair opportunity to litigate" probable cause issue in state court proceeding); Marmelshtein v. City of Southfield , No. 07-15063, 2009 WL 648499, at *3 (E.D. Mich. March 11, 2009) (applying Walker to no contest plea under Michigan law to hold that plaintiff who pled no contest to disorderly conduct could not later claim false arrest).

Defendants suggest that plaintiff's amended complaint says 74 hours, but it appears to say 24 hours. (Dkt. 5).

Because the undersigned concludes that the Madison Heights defendants are entitled to qualified immunity on all of plaintiff's federal claims, the other arguments raised by them will not be addressed.

In Wallace v. Kato , 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), the Supreme Court noted the "overlap" between false imprisonment and false arrest claims and, after collectively referring to these claims as "false imprisonment," the Court explained how a false imprisonment claim differs from a malicious prosecution claim. The Court explained that, "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges." Wallace v. Kato , 127 S.Ct. at 1096. After such legal process begins, "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." Id.